Karen GORBITZ, Plaintiff–Appellant,
Cross Appellee,

v.

CORVILLA, INC., Defendant–Appellee,
Cross Appellant.

Nos. 98–1410, 98–1603.

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 25, 1998.

Decided Nov. 18, 1999.

attitude that caused her termination but rather that Corvilla violated the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101–12117, when it "failed to accommodate" her doctor and physical therapy visits resulting from an automobile accident in which she suffered head and neck injuries.

Corvilla moved for summary judgment, arguing that Gorbitz failed to establish a prima facie case of discrimination because she did not establish that she had a disability as defined by the ADA. Gorbitz asserted that Corvilla management perceived her as disabled because they knew that she was being seen by various doctors. The district court found that Gorbitz established a prima facie case of discrimination under the ADA, but concluded that she failed to establish Corvilla's reasons for terminating her was pretextual. Accordingly, the court granted summary judgment in favor of Corvilla. We affirm.

Michael L. Schultz, Michael C. Kendall (argued), Indianapolis, IN, for Plaintiff–Appellant in No. 98–1410.

Michael C. Kendall (argued), Indianapolis, IN, for Plaintiff–Appellee in No. 98–1603.

Christopher A. Nichols (argued), May, Oberfell & Lorber, South Bend, IN, for Defendant–Appellee, Cross Appellant.

Before CUDAHY, COFFEY, and KANNE, Circuit Judges.

COFFEY, Circuit Judge.

Approximately one year after suffering injuries in an automobile accident, Corvilla, Inc. terminated Karen Gorbitz from her position as an accounting manager at Corvilla because, according to her employer, she had a poor attitude, was "negative and disruptive," and committed several "acts of outright insubordination." Gorbitz filed suit claiming that it was not her poor

## I. BACKGROUND

Corvilla is a not-for-profit agency that provides services, primarily by managing group homes, for mentally and physically disabled adults. Gorbitz began working for Corvilla on March 3, 1993, as an accounting manager. In her deposition, Gorbitz explained that she was a model employee until she was injured in an automobile accident on June 16, 1994. After the accident, she continued working for Corvilla as an accounting manager,[1] but frequently needed time off from work for visits to and treatments from various doctors and a physical therapist. At first, according to Gorbitz, Corvilla's Executive Director, Richard Rembold, who was also Gorbitz's supervisor, was understanding and allowed her a flexible work schedule to accommodate her medical appointments. Over time, however, Rembold gradually became less flexible, requesting that Gorbitz provide him with a weekly list of

---

1. The record does not indicate whether or for how long Gorbitz was off work after the automobile accident.

medical appointments and directing her to schedule her medical appointments after 3:30 p.m.

On August 3, 1995, Corvilla terminated Gorbitz. Rembold wrote a letter to Gorbitz explaining that she was terminated because she "manifested an attitude that was not conducive to effective office operations."

Gorbitz filed a charge with the Equal Employment Opportunity Commission ("EEOC"), contending, as she does before this court, that she was terminated because Corvilla refused to continue to accommodate her numerous doctor and physical therapy appointments. The EEOC concluded that there was no basis for believing that discrimination occurred, but it issued a right-to-sue letter in August 1996.[2] Thereafter, Gorbitz filed this action under the ADA alleging that she sustained head and neck injuries in an automobile accident and that she was a qualified individual with a disability. After completion of discovery, Corvilla moved for summary judgment. Backed by an affidavit of Rembold's successor, Julie Lucky, Corvilla argued that it did not know that Gorbitz was disabled and did not perceive that she was disabled. Gorbitz, relying on her deposition testimony, a memorandum that Rembold sent to her, and handwritten notes that she and Rembold exchanged about her doctors' appointments, argued that Corvilla management perceived her as disabled because of her numerous doctors' appointments. Gorbitz conceded that she never actually provided Corvilla with any documentation concerning her medical problems.

Gorbitz argued that, notwithstanding her failure to provide documentation concerning her medical condition to Corvilla, Corvilla managers were aware of her doctor's appointments and believed she had a disability. She asserted that, at the daily meeting, the managers would often inquire about how she was feeling or how the appointment was. She also referred to a memorandum that Rembold sent her acknowledging her numerous doctors' appointments since her accident and instructing her to make these appointments after 3:30 p.m. Gorbitz further pointed to three handwritten notes she wrote to Rembold in June and July 1995, informing him of scheduled doctors' appointments, and one handwritten note that Rembold sent her in July 1995 reminding her that he appreciated having her weekly schedule of doctors' appointments.

In granting summary judgment in favor of Corvilla, the district judge acknowledged that there was some question as to whether Corvilla perceived Gorbitz as disabled, but proceeded to a pretext analysis and concluded that Gorbitz failed to point to any evidence that Corvilla's explanation—that Gorbitz displayed a poor attitude, was "negative and disruptive", and committed "acts of outright insubordination"—was pretextual.

## II. DISCUSSION

We review the district court's grant of summary judgment de novo, applying the same standard as the district court and viewing the record in the light most favorable to Gorbitz. See Malabarba v. Chicago Tribune Co., 149 F.3d 690, 696 (7th Cir.1998). We affirm a grant of summary

---

**2.** 29 C.F.R. § 1601.28(a)(1) reads:

Issuance of notice of right to sue upon request.

(1) When a person claiming to be aggrieved requests, in writing, that a notice of right to sue be issued and the charge to which the request relates is filed against a respondent other than a government, governmental agency or political subdivision, the Commission shall promptly issue such notice as described in § 1601.28(e) to all parties, at

any time after the expiration of one hundred eighty (180) days from the date of filing of the charge with the Commission....

See also Riley v. American Family Mutual Insurance Co., 881 F.2d 368, 371 (7th Cir. 1989) (plaintiff has the right to request a right-to-sue letter from the EEOC); Kamberos v. GTE Automatic Electric, Inc., 603 F.2d 598, 603 (7th Cir.1979) (same).

judgment only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *see also Malabarba*, 149 F.3d at 696.

█ To establish a claim of discrimination under the ADA, Gorbitz must demonstrate that (1) she was disabled; (2) her work performance met Corvilla's legitimate expectations; (3) she was terminated; and (4) the circumstances surrounding her termination indicate that it is more likely than not that her disability was the reason for the termination. *See Patterson v. Chicago Assoc. for Retarded Citizens*, 150 F.3d 719, 725 (7th Cir.1998) (citing *Leffel v. Valley Fin. Servs.*, 113 F.3d 787, 794 (7th Cir.), *cert. denied*, 522 U.S. 968, 118 S.Ct. 416, 139 L.Ed.2d 318 (1997)). Once Gorbitz establishes her prima facie case, then the burden shifts to Corvilla to provide a legitimate, nondiscriminatory reason for Gorbitz's termination. On the other hand, if Gorbitz should fail to establish her prima facie case, then the burden does not shift and Corvilla is "not put to the burden of stating the reasons for [Gorbitz's] termination." *Coco v. Elmwood Care, Inc.*, 128 F.3d 1177, 1179 (7th Cir.1997) (citations omitted). In *Coco*, this court emphasized that "the prima facie case under *McDonnell Douglas*[, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973),] must be established and not merely incanted." *Coco*, 128 F.3d at 1178. Thus, even though the court granted summary judgment in favor of Corvilla because Gorbitz failed to establish pretext, we turn first to the prima facie case analysis.

█ The ADA proscribes discrimination in the terms and conditions of employment "against a qualified individual with a disability." 42 U.S.C. § 12112(a); *see, e.g., Patterson*, 150 F.3d at 725. The ADA defines the term "disability" to mean: "(A) a physical or mental impairment that substantially limits one or more of the major

life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(2).

█ With respect to establishing the first element of a claim under the ADA—that she was disabled, Gorbitz argues that she met the third definition of a disability, *see* 42 U.S.C. § 12102(2)(C), because "Corvilla may have perceived her as being physically or mentally impaired." To defeat Corvilla's motion for summary judgment, Gorbitz must establish that there is a factual dispute about whether Corvilla regarded her impairment as being substantially limiting. *See Davidson v. Midelfort Clinic, Ltd.*, 133 F.3d 499, 510 (7th Cir.1998). Gorbitz speculates that Corvilla regarded her as disabled because she had many medical appointments after the accident and Corvilla management knew about these appointments. Even though she had numerous medical appointments, it does not necessarily follow that Corvilla assumed she had a disability because it is well known that medical appointments, in and of themselves, do not signal the existence of a disability; doctors frequently prescribe physical therapy for those without any substantial limitations in a major life activity that rise to the level of a disability. Because a "plaintiff's speculation is not a sufficient defense to a summary judgment motion," *Patterson*, 150 F.3d at 724 (citation omitted), Gorbitz's speculation about what Corvilla *might* have believed does not create a genuine issue of fact. *See id.* Accordingly, Gorbitz has failed to demonstrate that there is a factual dispute about whether she is disabled within the meaning of the ADA. Because Gorbitz failed to establish a prima facie case of discrimination, the district court properly granted summary judgment in favor of Corvilla.

█ In its cross appeal, Corvilla now argues that the district court erred in denying its motion for sanctions based on Gorbitz's failure to comply with the di-

rections of the magistrate.[3] In October 1997, the district court denied Corvilla's motion for sanctions without prejudice, but granted Corvilla "leave to renew [it] at an appropriate time before the conclusion of the case." Corvilla, however, never renewed its motion before the court granted summary judgment in January 1998. Our review of the denial of a motion for sanctions is deferential. *See Smith v. Chicago Sch. Reform Bd.*, 165 F.3d 1142, 1144 (7th Cir.1999) (citing *National Hockey League v. Metropolitan Hockey Club, Inc.*, 427 U.S. 639, 96 S.Ct. 2778, 49 L.Ed.2d 747 (1976)).

Corvilla argues that the judge committed reversible error because he: 1) refused to allow the magistrate judge to rule on Corvilla's motion for sanctions; 2) abused his discretion by denying Corvilla an opportunity to renew its motion for sanctions; and 3) abused his discretion by declining to rule on the merits of the motion for sanctions until the end of the case. Corvilla's first argument, that the magistrate judge should have been permitted to rule on the motion for sanctions is without merit because a magistrate judge is without the authority to award sanctions. *See Alpern v. Lieb*, 38 F.3d 933, 935 (7th Cir. 1994). Corvilla's argument that it was denied the opportunity to renew its motion for sanctions is also specious because the record does not reflect that the trial judge ever denied Corvilla an opportunity to renew its motion. In fact, the judge explicitly invited Corvilla to renew its motion, and Corvilla failed to do so. Similarly, Corvilla's argument that the district court judge abused his discretion by declining to rule on the merits of the motion until the end of the case is without merit.

Corvilla also argues that the district court abused its discretion by ordering each party to bear its own costs. Although costs "shall be allowed as of course to the prevailing party," a district court may direct each party to bear its own costs. Fed.R.Civ.P. 54(d)(1). This court has long held that the "decision to make the award [of costs] is entrusted to the discretion of the district court." *See Soler v. Waite*, 989 F.2d 251, 255 (7th Cir.1993). Here, we find no abuse of discretion in the district court's order directing each party to bear its own costs.

The judgment of the district court is

AFFIRMED.

CUDAHY, Circuit Judge, concurring in the judgment.

It is quite clear that the reason proffered by Corvilla for terminating Gorbitz was not pretextual. This is the basis on which the district court decided the case. In reaching that conclusion, the district court conceded, however, that there were questions of material fact regarding Gorbitz's prima facie case of discrimination. The majority, on the other hand, vigorously denies the possibility of a prima facie case. In so doing, I believe, it draws inferences in favor of Corvilla and not against it, as summary judgment practice requires. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The issue whether there is a prima facie case is close—and one we need not reach at all since Corvilla has offered a perfectly plausible and non-discriminatory reason for the termination.

I therefore cannot approve the majority's approach to the analysis, which may lay out a misleading path in dealing with future cases of disability discrimination.

---

3. Specifically, Corvilla argues that Gorbitz failed to explore the possibility of settlement before the conference and failed to appear personally at the conference.