# In the

# United States Court of Appeals

## For the Seventh Circuit

———————

No. 01-2447

MARTIN ABRAMS,

*Plaintiff-Appellant*,

v.

KENT WALKER,

*Defendant-Appellee.*

———————

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 00C5768—**Suzanne B. Conlon**, *Judge.*

———————

ARGUED FEBRUARY 19, 2002—DECIDED OCTOBER 10, 2002

———————

Before COFFEY, EASTERBROOK, and DIANE P. WOOD,
*Circuit Judges.*

COFFEY, *Circuit Judge.* Martin Abrams ("Abrams") is
an attorney in Illinois who alleges that his civil rights
were violated when he was arrested by Illinois State
Trooper Kent Walker ("Walker") when Walker was con-
ducting a traffic stop in the fall of 1998. The district court
granted Walker's motion for summary judgment, and
Abrams appeals. We affirm.


## I. FACTUAL BACKGROUND

While many factual issues are disputed in this case, the
record is clear on several basic points. On the evening

of October 13, 1998, Abrams left the Boone County Courthouse with Trent Forte ("Forte"), his client. Abrams, having some concerns about potential police misconduct, told Forte that Abrams would follow him on the road back to Chicago. Shortly after entering the Northwest Tollway, Forte was stopped by Trooper Walker. Walker, in full uniform, exited his marked squad car and approached Forte's car.

Noticing that Forte had been stopped, Abrams pulled his car onto the highway shoulder, backed up, parked in front of Forte, exited his car, and approached Walker. Abrams identified himself as Forte's attorney and questioned Walker's decision to pull Forte over. Turning his attention from Forte's vehicle, Walker explained that he was going to issue tickets to Forte for following too closely, having an obstructed windshield, and not wearing a seatbelt. Walker then instructed Abrams to return to his vehicle and warned him that his failure to comply would result in Walker issuing tickets to Abrams.

Abrams admits that he refused to obey Walker's order, even though he was aware it was being issued by a uniformed officer of the peace engaged in the performance of his duties, and even after that order was repeated. Walker then informed Abrams that he was being issued tickets, whereupon Abrams both announced and manifested his intent to flee in his vehicle. While trying to stop him from leaving, Walker found a knife in Abrams' car, which he then put on the roof of Abrams' car. Abrams subsequently retrieved the knife once Walker had returned to his squad car to call for backup. Though Abrams disputes Walker's assertion that Walker warned Abrams not to touch the weapon, Abrams admits that he retrieved the weapon moments after Walker had removed it from his reach and informed him that he was going to be arrested for the unlawful use of a weapon. In all, Abrams' actions

had the effect of interrupting and delaying Walker's traffic stop of Forte.

Abrams was then taken into custody. Though the parties dispute the extent of Abrams' cooperation with Walker as the latter was placing the former in handcuffs, Abrams was eventually charged with obstructing a police officer and resisting arrest under 720 ILCS 5/31-1(a)(2000). Abrams was also charged with two minor traffic offenses (*i.e.*, improper parking and improper backing). (Abrams was not charged with the felony, as the state attorney's office did not approve the charges.) Abrams appeared as a defendant in a state court criminal bench trial on these charges in February 2000, and, represented by counsel, testified in his own defense, and was found not guilty.

## II.  PROCEDURAL POSTURE

On September 19, 2000, Abrams filed a federal complaint against Walker in his individual capacity under both federal and state law, alleging that Walker had engaged in malicious prosecution and that Walker had retaliated against him for exercising his First Amendment rights.[1] On November 28, 2000, Abrams filed an amended complaint in which he dropped the state law claim, reasserted the malicious prosecution claim under 42 U.S.C. § 1983, and raised claims for violations of his First and Sixth Amendment rights also pursuant to § 1983.[2]

---

[1]  Abrams had also named another trooper who assisted Walker, Thé Tran, as a defendant, but voluntarily dismissed him and Tran is not a party to this appeal.

[2]  The district court had jurisdiction under 28 U.S.C. § 1331 and § 1343(a)(3). However, contrary to Appellant's Brief, the district court did not have supplemental jurisdiction under 28 U.S.C.

(continued...)

On February 23, 2001, Walker filed a motion for summary judgment. In his answer to Walker's summary judgment motion, Abrams abandoned his Sixth Amendment claim. On April 9, 2001, the district court granted summary judgment in Walker's favor. The district court granted Walker's summary judgment motion on both counts, holding (1) that Walker had probable cause to arrest Abrams for obstructing a police officer and thus Abrams could not support a malicious prosecution claim; and (2) that Abrams never engaged in any protected First Amendment speech.

On April 18, 2001, Abrams filed a motion to reconsider or to alter or amend judgment, which the district court denied on May 23, 2001. Abrams timely filed a notice of appeal on June 6, 2001.

## III.  DISCUSSION

Appellant asks this Court to reverse the district court's grant of summary judgment solely with respect to his First Amendment retaliation claim. Appellant objects to the district court's determination of facts in rejecting the retaliation claim.

### A.  Basis for Summary Judgment

A summary judgment motion must be granted if there is "no genuine issue as to any material fact," *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986), not, as Appellant states, "if there are any genuine issues of fact." "Only disputes over facts that might affect the outcome of the suit

---

[2]  (...continued)
§ 1367(a), as Abrams had dropped the state law claim in his amended complaint.

under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In considering the motion for summary judgment, the district court properly relied on the state trial transcript and not solely on Walker's Rule 56 pleadings. *See Covalt v. Carey Canada, Inc.*, 950 F.2d 481, 485 (7th Cir. 1991) (holding that the entire record may be examined when considering a summary judgment motion); Fed. R. Civ. P. 56(c). We review a grant of summary judgment *de novo*, viewing all the facts and drawing all reasonable inferences therefrom in favor of the nonmoving party. *See Butera v. Cottey*, 285 F.3d 601, 605 (7th Cir. 2002).

### B.  Retaliatory Claim

It is well established that "[a]n act taken in retaliation for the exercise of a constitutionally protected right violates the Constitution." *DeWalt v. Carter*, 224 F.3d 607, 618 (7th Cir. 2000). A public employee who retaliates against someone for engaging in protected speech may violate the First Amendment, which, of course, has been held applicable to state action under the Fourteenth Amendment. *See Martinez v. Hooper*, 148 F.3d 856, 858 (7th Cir. 1998); *Ryan v. County of DuPage*, 45 F.3d 1090, 1091 (7th Cir. 1995). In order to establish a prima facie case of First Amendment retaliation, a plaintiff must demonstrate that (1) his conduct was constitutionally protected; and (2) his conduct was a "substantial factor" or "motivating factor" in the defendant's challenged actions. *See Thomsen v. Romeis*, 198 F.3d 1022, 1027 (7th Cir. 2000) (citing *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)). This court has held that even if a defendant was "brimming over with unconstitutional wrath" against a § 1983 plaintiff, that plaintiff cannot prevail unless he or she establishes that the challenged action would not

have occurred "but for" the constitutionally protected conduct. *Button v. Harden*, 814 F.2d 382, 383 (7th Cir. 1987). If this burden is met, the burden shifts to the defendant, who must show by a preponderance of the evidence that he would have taken the same actions even in the absence of the protected conduct. *See Thomsen,* 198 F.3d at 1027.

Our Constitution permits citizens to criticize police officers, within reason, both verbally and nonverbally. *See, e.g., Duran v. City of Douglas*, 904 F.2d 1372 (9th Cir. 1990) (making an obscene hand gesture and yelling expletives); *City of Houston v. Hill*, 482 U.S. 451 (1987) (shouting at police); *Terminiello v. Chicago*, 337 U.S. 1 (1949) (giving a speech). Not all conduct is so protected, however. *See, e.g., Ryan v. County of DuPage*, 45 F.3d 1090 (7th Cir. 1995) (refusing to remove a mask); *People v. Crawford*, 505 N.E.2d 394 (Ill. App. Ct. 1987) (interfering with an arrest); *People v. Finley*, 363 N.E.2d 871 (Ill. App. Ct. 1977) (refusing to "clear the area"). Appellant would have us believe that once he began conduct protected by the First Amendment, he became insulated from the consequences of any further actions. We disagree, for it is entirely possible to conceive of conduct that is involved with free expression but nevertheless illegal, *see, e.g., United States v. Douglass*, 579 F.2d 545, 548-49 (9th Cir. 1978), just as it is possible for conduct that begins under the mantle of constitutional protection (*e.g.*, questioning an officer) to end outside of such protection (*e.g.*, obstructing an officer). *See Crawford*, 505 N.E.2d at 396 ("A person may not use force to resist an arrest by one whom he knows to be an officer of the law, even if the arrest is unlawful. . . . He may inquire as to its reason; he may point out the officer's mistake; he may protest and argue; but he may not impede the arrest by physical action.")

Here, Abrams failed to demonstrate that his conduct was constitutionally protected. While he may have been entitled to his initial questioning of the officer, he had no constitutional right to engage in conduct that he ad-

mits was both disobedient and dilatory. Abrams admits that he repeatedly disobeyed the lawful order of a uniformed state trooper engaged in the performance of an inherently risky duty—*i.e.*, a traffic stop on the side of a busy interstate highway. Abrams furthermore admits that he attempted to flee the scene once the officer informed Abrams that he was being issued tickets. Abrams also admits he retrieved the knife Walker had taken from Abrams' car once Walker had returned to his squad car to call for backup. Abrams even admits that his actions had the effect of interrupting and delaying Walker's traffic stop of Forte.

The dissent lists four "facts" that "seem" to have been "fairly disputed on the summary judgment record." *Post* at 13. To make clear our conclusion that there were no "*genuine* issue[s] of *material* fact" with respect to these matters, we quote at length Abrams' own statements made while under oath at trial:

Q: [W]as there any additional conversation between yourself and the trooper after he told you why he was ticketing your client and you told him who you were?

A: *He said to me get in your car.* I said well, I'd like to talk to my client.

Q: Did he respond?

A: *He said get in your car or you're getting tickets.*

Q: What if anything did you say or do at that time?

A: I said what for. He said tinted windows, parking on the tollway, and backing up on the tollway.

Q: After he said that to you, what if anything did you do?

A: I laughed because I said that's a factory Corvette. Those are not tinted windows.

Q: What happened then?

A:  *He said now you're getting tickets. I said you know what. I'm going to get in my car and leave. And I went to my car.*

Q:  So you went to your car to leave before he told you to go to your car, even?

A:  No. *He had told me from the very beginning get in your car or you're going to get tickets.*

Q:  Okay.

A:  *Then when he said to me now you're getting tickets, then I went and got in my car.*

Q:  What happened then?

A:  Well, *I told him I was going to leave so he came running up to my car and he reached into my car and he tried to grab my keys.*

(Tr. at 120-21) (emphasis added). Upon cross-examination, Abrams again admitted that he attempted to flee the scene:

Q:  Do you believe our traffic laws apply to you?

A:  Sure.

Q:  Yet when the officer told you that you were going to receive a traffic ticket, you took it upon yourself to get in the car and attempt to leave. True?

A:  No. *I said I was going to leave. I never made—I was going to leave. I would have.*

. . .

Q:  . . . Is the reason you were going to leave be-cause you were terrified of this officer or because you felt he had no right to give you a ticket?

A:  *I felt he had no right to give me a ticket.*

(Tr. at 135-36.) Abrams also admitted to retrieving the knife that Trooper Walker had removed from Abrams'

car and placed outside of Abrams' reach (on the top of Abrams' car):

> Q: At what point do you start getting scared of Trooper Walker?
>
> A: When he says you're under arrest for a UUW [unlawful use of a weapon] felony.
>
> Q: And he said that when he found the knife in the back of your car?
>
> A: *He says you're under arrest for UUW felony.*
>
> Q: You were so scared of him that at that point you proceeded to remove the knife that he had placed on the roof of your car and boldly take it back inside. Is that true?
>
> A: *I took the knife off the top of my car so it wouldn't scratch my car and put it back in the car. Yes, I did.*

(Tr. at 139) (emphasis added). After his exchange with Walker over the tickets and the knife, Abrams sat in his car while Walker returned to his car to call for backup. When asked to give an approximation of the time it took for Trooper Walker's call for backup to be responded to, Abrams said "twenty minutes." (Tr. at 124.)

These extended excerpts from Abrams' state trial transcript show quite clearly, *pace* the dissent, that there was no "genuine issue" over whether Abrams (1) failed to comply with the repeated lawful order of Trooper Walker to return to his car (in the midst of a traffic stop on a busy interstate highway); (2) that Abrams attempted to flee[3]

---

[3] "Fleeing" does not imply "rac[ing] off through the fields," as the dissent states. *Post* at 15. The first two definitions given for the intransitive verb "flee" in Merriam-Webster's Collegiate Dictionary are "to run away, often from danger or evil," and "to

(continued...)

once Walker told him he would be ticketed; (3) that Abrams contravened Walker's implicit order not to retrieve the weapon;[4] and (4) that Abrams' actions delayed Walker's traffic stop of Forte. A person who believes that he has a defense to a charge must make that defense in court; he cannot flee the scene in an effort to avert the issuance of a citation. The potential recipient of a traffic citation just can't have the privilege of saying: "Since in my own eyes I have not committed any infraction, I can leave the scene immediately despite the officer's contrary instructions."

Appellant cites *City of Houston v. Hill*, 482 U.S. 451 (1987), for the proposition that verbal criticism of police officers is an important characteristic of a free nation and cannot be punished. This is true. But Mr. Abrams could have been reciting the *Magna Carta* and still been properly apprehended by Trooper Walker. His interference with a traffic stop on the side of a busy interstate was not the proper time, place, or manner for an officer of the court to register his disagreement with the traffic

---

[3] (...continued)
hurry toward a place of security." It is clear from Abrams' own testimony that he attempted to leave the scene in his car once Trooper Walker informed him that Abrams would be issued tickets. The majority believes it is eminently fair to characterize as "fleeing" an attempt to leave the scene of a traffic stop in one's vehicle after a uniformed police officer communicates his intent to issue tickets.

[4] We are required, upon review of a summary judgment grant, to draw all "*reasonable* inferences" in favor of the non-moving party. *Butera*, 285 F.3d at 605. To assume, as the dissent does, that there was not "something wrong" with Abrams' retrieval of the knife (for which he was being arrested) is not a reasonable inference.

stop. Moreover, Abrams' attempt to leave the scene after Walker informed him he was going to be issued tickets was criminal.

Even if Abrams' conduct was constitutionally protected, he still failed to satisfy the second *Mt. Healthy* requirement, for Abrams failed to demonstrate that his conduct was a "substantial factor" or "motivating factor" in the defendant's challenged actions. *See Thomsen*, 198 F.3d at 1027. While it may be true that Walker was in fact "brimming over with unconstitutional wrath" against Abrams, Appellant cannot prevail unless he establishes that the challenged action would not have occurred "but for" the constitutionally protected conduct. *Button*, 814 F.2d at 383. To this end, Abrams offers a truncated chronology of the events as evidence that Abrams' protected conduct was a "substantial factor" or "motivating factor" in Walker's allegedly retaliatory actions. Abrams argues that a reasonable jury could infer, as a result of this chronology, that he was "falsely arrested" and that he was arrested "because of what [he] said." Abrams then opines that "the arrest was for an illegal purpose" and finally that "[a]nger often leads to unthinking retaliation." After reviewing the record and the standards presented in our line of cases, we agree with the district court's finding that this chronology is unconvincing, as it fails to present "definite, competent evidence to rebut the motion," *Michael v. St. Joseph County*, 259 F.3d 842, 845 (7th Cir. 2001), contains mere speculation, and demands the making of unreasonable inferences in support of Abrams' arguments. *See Gorbitz v. Corvilla, Inc.*, 196 F.3d 879, 882 (7th Cir. 1999). Abrams admitted under oath at his state trial that he (1) repeatedly disobeyed Walker; (2) attempted to flee the scene once Walker informed him that he was going to be cited; (3) retrieved the knife Walker had taken from Abrams' car; and (4) interrupted and delayed Walker's traffic stop of Forte. The undisputed facts and reasonable inferences therefrom

plausibly drawn from the entire record serve to establish that Walker arrested Abrams for his conduct, not for his speech.

Appellee Walker asks this Court to rule that the existence of probable cause is a complete defense to a First Amendment retaliation claim in the context of an arrest. *See Curley v. Village of Suffern*, 268 F.3d 65, 73 (2d Cir. 2001) (holding that the existence of probable cause vitiated the need for an inquiry into an underlying motive for the arrest); *Redd v. City of Enterprise*, 140 F.3d 1378, 1383-84 (11th Cir. 1998) (holding that the existence of probable cause for an arrest is a complete defense to a First Amendment retaliation claim under the doctrine of qualified immunity). We recognize that such a step would not be incongruent with our recent decision in *Williams v. Jaglowski*, 269 F.3d 778, 781 (7th Cir. 2001), in which we held that probable cause is a complete defense to false arrest claims brought under the Fourth Amendment. Nevertheless, whereas the Appellant in this case has not established that the defendant officer had, in fact, a retaliatory motive, we decline to rule on this issue.

## IV. CONCLUSION

The decision of the district court to grant the defendant's motion for summary judgment was proper.

AFFIRMED.

DIANE P. WOOD, *Circuit Judge,* dissenting. If this appeal had come to us after a full trial had taken place, I would probably not be dissenting. But the procedural posture of a case on appeal has a critical bearing on the way in which this court must consider the facts. With respect, I cannot agree with my colleagues that the facts before us here, taken in the light most favorable to plaintiff Martin Abrams, require the conclusion that defendant Kent Walker is entitled to judgment as a matter of law. To the contrary, the record here shows that there are disputed issues of material fact that make summary judgment inappropriate. I therefore dissent.

Without repeating the facts that the majority has set forth, I wish to highlight those that seem to me fairly disputed on the summary judgment record. There are four alleged admissions from Abrams that are central to the majority's analysis. It claims that Abrams admitted that (1) he repeatedly disobeyed Walker's order to return to his car, (2) he attempted to flee the scene once Walker informed him that he would be ticketed, (3) he retrieved the knife that Walker had taken from his car once Walker returned to his squad car to call for backup, and (4) his actions had the effect of interrupting and delaying Walker's traffic stop of Trent Forte (Abrams's client). If there were indeed no material issues of fact about these points and Abrams had really made such admissions, then I would agree that the district court properly entered summary judgment for Walker. No malicious prosecution action could lie, because Walker would have had probable cause to arrest Abrams for obstructing a police officer, and no trier of fact or court could find that Abrams had engaged in speech protected by the First Amendment, which is the predicate for Abrams's retaliation claim.

A closer look at these four admissions, however, shows that they are not what they appear to be. The first one—

that Abrams allegedly repeatedly disobeyed Walker's order to return to the car—is contested. According to Abrams's version of the facts, when Walker ordered him to return to his car, Abrams simply asked why. Walker told him that Walker could give him tickets for having tinted windows and for backing up on the highway. Abrams laughed, and said that the windows were not tinted. Walker then responded (without any further requests about returning to the car) that Abrams was going to get ticketed. Abrams then indicated that he was going to comply with Walker's request that he return to the car (and note that Walker did not testify that he had at that point also ordered Abrams to remain on the scene—it was only later that he ran over and grabbed Abrams's keys), and said, "You know what, I'm going to get in my car and leave." Obviously, this is not Walker's version of the events, but we cannot resolve disputed facts like who said what to whom, at what time, and who walked where, on summary judgment, when we are looking at the accounts of two eyewitnesses or participants. Indeed, the majority explicitly agrees with the proposition that mere argument about the validity of an arrest is not enough to show probable cause, because it cites the Illinois case so holding, *People v. Finley*, 363 N.E.2d 871, 873 (Ill. App. Ct. 1977) (obstruction statute proscribes only some physical act that imposes an obstacle to the officer's performance of his duties, not mere argument), *ante* at 6. Similarly, the majority also acknowledges the holding of *People v. Crawford*, 505 N.E.2d 394, 396 (Ill. App. Ct. 1987) (resistance statute proscribes the use of physical force, not mere argument), *ante* at 6. The facts as Abrams portrayed them show nothing more than argument or disagreement, and they show that Abrams eventually proposed doing exactly what Walker was asking him to do: returning to his car.

The second alleged admission relates to Abrams's supposed attempt to flee the scene. The use of the word "flee"

here is problematic. It makes it sound as if Abrams raced off through the fields in an attempt to avoid Walker, or leapt into his car and gunned the accelerator. In fact, Abrams, in keeping with Walker's direction to return to his car, said that he was going to leave the area, and he said this only after Walker suggested a trumped-up charge about tinted windows (recalling that for present purposes we must assume that the windows were in fact not tinted). After Abrams voluntarily offered to leave, Walker grabbed his keys, looked in his car, and retrieved a small hunting knife from the back. The knife was not an unlawful weapon or implement, and Walker was so unconcerned about it that he simply tossed it onto the roof of Abrams's car. Walker's actions do not imply that he was trying somehow to secure the knife. Instead, Walker just walked away while Abrams remained unrestrained in his car and made several telephone calls. If believed by a trier of fact, this sequence would refute any claim that Abrams was trying to flee the scene. According to Abrams, after he finished his telephone calls, Walker returned, ordered him out of the car, and Abrams obeyed. Walker then handcuffed Abrams and told him that he was under arrest for possessing the hunting knife. Abrams did not resist the handcuffing, but Walker put the cuffs on so roughly that he broke Abrams's watch in the process. At that point, Walker did not mention charges of obstructing a police officer or resisting arrest. That arose only later at the police station, when Walker realized that he could not charge Abrams with anything based on the small knife.

This shows that the claim about the knife is also disputed. According to Walker, Abrams retrieved the knife without permission after Walker left the car. Abrams disputes the critical assertion here, which is whether Walker verbally or otherwise instructed him to leave the knife on the roof of the car. Either version of the events is

possible; this is a quintessential example of something that cannot be resolved on summary judgment.

Finally, with respect to the fourth alleged admission, Abrams took the position in the district court and in his affidavit that he was cooperative, courteous, and did nothing to impede Walker's traffic stop of Forte.

This leaves us with an arrest based solely on the words Abrams spoke to Walker, questioning the validity of the stop and inquiring what basis for an arrest existed. Walker had no right to retaliate against Abrams by arresting him just because Walker was offended by Abrams's words. *Finley* and *Crawford* make this clear as a matter of Illinois law, and the First Amendment does not permit state actors to impose punishment because of the communicative content of words. See *Houston v. Hill*, 482 U.S. 451, 461 ("[T]he First Amendment protects a significant amount of verbal criticism and challenge directed at police officers."). Nothing in the lengthy quotes from Abrams's testimony that the majority has furnished refutes these points as a matter of law.

I would reverse the district court's judgment in favor of Walker and remand this case for a trial on the merits, so that these factual disputes can be resolved properly. I therefore dissent.

A true Copy:

     Teste:

                                  _____
                                   ***Clerk of the United States Court of
                                      Appeals for the Seventh Circuit***

USCA-02-C-0072—10-10-02