Cedric JOHNSON, Plaintiff,

v.

Phil KINGSTON, Tim Douma, Jack Kestin and Bill Puckett, Defendants.

No. 03–C–0143–C.

United States District Court, W.D. Wisconsin.

Nov. 20, 2003.

Cedric R. Johnson, pro se.

William H. Ramsey, Assistant Attorney General, Madison, WI, for Defendants.

## OPINION AND ORDER

CRABB, Chief Judge.

This is a civil action for monetary and injunctive relief brought pursuant to 42 U.S.C. § 1983. Plaintiff Cedric Johnson, an inmate at the Waupun Correctional Institution in Waupun, Wisconsin, contends that defendants violated his First Amendment rights by retaliating against him for his involvement in other lawsuits against prison employees. According to plaintiff, defendants transferred him to the Waupun Correctional Institution because he had filed a successful lawsuit against the medical director for the Wisconsin Bureau of

Health Services and had testified against correctional officers at the Waupun facility in a lawsuit filed by another inmate.

The case is before the court on defendants' motion for summary judgment. Before turning to that motion, it is necessary to address plaintiff's motion to exclude the affidavit of Timothy Douma that defendants submitted in support of their motion for summary judgment. In the affidavit, Douma referred to three attached exhibits, including an Exhibit E, but the court's copy of the affidavit did not include an Exhibit E. The clerk's office called the omission to defendants' attention at my request. In response, defendants filed a second copy of the entire affidavit, including all three attached exhibits, and sent plaintiff a copy of the entire affidavit. Plaintiff then moved to exclude the affidavit on the grounds that it was untimely and has been "altered."

Plaintiff's motion will be denied for several reasons. First, despite the diligent care and attention the clerk's office gives to the maintenance of court files, I cannot be absolutely certain that the exhibit was missing when defendant filed the initial affidavit. Second, plaintiff has not been prejudiced by the late introduction of the exhibit. He did not dispute any of defendants' proposed findings of facts relating to the exhibit; the exhibit is not determinative to the outcome of the summary judgment motion; and plaintiff does not claim that Exhibit E was missing from his original copy of the affidavit. Finally, contrary to plaintiff's argument that several alterations have been made to attached Exhibit D, I cannot see any differences between the copy of this exhibit and the one originally submitted. (Plaintiff does not argue that any alterations have been made to Exhibit E.)

I turn now to defendants' motion for summary judgment, which will be granted. Plaintiff has failed to produce evidence to show that defendants knew of his involvement in the two prior suits before they made the decision to transfer him. Without this evidence he cannot succeed on his claim that the transfer was retaliatory.

From the parties' combined proposed findings of fact, I find that the following facts are material and undisputed.

## UNDISPUTED FACTS

Plaintiff Cedric Johnson is an inmate at the Waupun Correctional Institution in Waupun, Wisconsin, transferred there over his objections from the Columbia Correctional Institution in Portage, Wisconsin. At the Columbia facility, defendant Timothy Douma is the security director, defendant Jack Kestin is an offender classification specialist and the program review coordinator and defendant Philip Kingston is the warden. Defendant Stephen Puckett is Director of the Bureau of Offender Classification and Movement for the Wisconsin Department of Corrections.

Plaintiff has been involved in two civil suits relating to incidents occurring between 1995 and 1997, when he was incarcerated at the Waupun facility. In 1998, he filed a lawsuit against George M. Daley, the medical director for the Wisconsin Bureau of Health Services. The resulting publicity proved disruptive and plaintiff was transferred out of the Waupun facility while the suit was pending. In 2000, a jury awarded plaintiff substantial monetary damages after finding that Daley had violated plaintiff's Eighth Amendment rights in failing to provide adequate medical care for plaintiff's liver disease. This award was publicized by the local press in the state of Wisconsin. In May 2001, plaintiff testified against several correctional officers at the Waupun facility in a suit brought by another inmate for events plaintiff had witnessed while he was incarcerated there.

On July 6, 2002, while incarcerated at the Columbia facility, plaintiff told a correctional officer that he "liked her personality" and hoped he could find someone with her qualities. He handed her a newspaper article describing a $326,000 award that he supposedly had recovered in his suit against Dr. Daley and told her that "fifty percent of this could be [hers]" and that she would need only a P.O. Box. For this conduct, plaintiff was issued a conduct report charging him with soliciting staff in violation of Wis. Admin. Code § DOC 303.26.

Defendant Douma reviewed the conduct report and decided to process it as a major offense pursuant to Wis. Admin. Code § DOC 303.68(2). Sometime before January 2, 2003, defendant Douma learned that the Waupun facility wished to make an inmate trade with the Columbia facility. Plaintiff came to mind because of the solicitation attempt. On January 2, 2003, defendant Douma met with defendant Kingston and two other prison officials to discuss the possibility of recommending plaintiff for a transfer to Waupun. After reviewing plaintiff's prior conduct history and the report of the solicitation attempt, the group decided unanimously to recommend plaintiff's transfer.

The security office advised defendant Kestin at the Columbia facility that plaintiff had been recommended for transfer to the Waupun institution. After Kestin determined that plaintiff had no special placement needs preventing him from being transferred there, he informed plaintiff's social worker, Kelly Wheeler, of the recommendation.

On January 7, 2003, defendant Kestin and two other officials at the Columbia facility held a program review committee hearing to consider plaintiff's transfer. (The program review committee handles inmate classification for custody levels, risk levels, program needs and placement.)

At the hearing, defendant Kestin told plaintiff that he was under consideration for a transfer to the Waupun institution. Plaintiff objected, noting his involvement in a civil suit related to persons working at that facility. The committee approved the transfer nonetheless, after reviewing plaintiff's inmate history regarding his risk relative to violence, his program needs and performance and his custody classification and medical needs. It granted plaintiff's request to keep his March 2003 recall date and advised plaintiff that if he had concerns about people at Waupun who were familiar with his prior lawsuits, he should tell the Waupun security office.

Any inmate transfer requires the approval of the Wisconsin Department of Corrections' Division of Adult Institutions. Thomas Wickeham approved the recommendation for plaintiff's transfer on January 7, 2003, acting on behalf of defendant Puckett. Plaintiff sent two letters to defendant Douma dated January 8 and 9, 2003, in which he asked not to be transferred to the Waupun facility and stated that he feared for his safety both because of his jury award and his testimony against several correctional officers at the Waupun facility. Plaintiff attached newspaper articles about his award. In addition, plaintiff wrote defendant Kingston, expressing his fear of being transferred to Waupun because of his involvement in the two lawsuits, and asking for a transfer to one of two other suggested prisons.

Plaintiff was transferred to the Waupun facility on January 10, 2003. Defendant Douma wrote plaintiff the same day, advising him that he was forwarding plaintiff's letters and the attached photocopies to the security director at the Waupun facility. Defendant Douma contacted the security director and alerted him to plaintiff's concerns.

On January 10, 2003, defendant Puckett received plaintiff's appeal of the transfer recommendation, in which plaintiff stated that he feared for his safety at the Waupun facility because of his testimony against correctional officers there. He provided the names of fifteen particular officers at the Waupun facility against whom he had testified. On January 16, 2003, defendant Puckett affirmed the recommendation of the placement review committee and advised plaintiff that the placement was appropriate and that no further consideration would be given to the matter. Undeterred, plaintiff filed a second appeal on January 19, 2003, in which he stated: "This is my second appeal without hearing a reply to first (sic) appeal." He reiterated the reasons he feared for his safety at Waupun. On January 31, 2003, defendant Puckett signed a response to the appeal, affirming his original recommendation and giving the same explanation he had given earlier.

On March 11, 2003, the program review board of the Waupun facility held plaintiff's scheduled recall hearing. After reviewing plaintiff's offense history, sentence structure, security needs, service needs and available space, the committee recommended that plaintiff stay at the Waupun facility. This recommendation was approved. Plaintiff remains incarcerated at the Waupun facility.

## OPINION

Defendants advance three primary arguments in support of their motion for summary judgment. First, they should be granted judgment because plaintiff did not state a claim of retaliatory transfer in his initial complaint. Second, plaintiff's claim should be dismissed as moot insofar as he requests injunctive or monetary relief for any injury allegedly incurred after March 2003, because defendants are not empowered to effectuate injunctive relief and because persons other than defendants de-cided to keep plaintiff at Waupun after his scheduled recall date. Finally, the undisputed facts entitle them to judgment as a matter of law.

### A. *Failure to State a Claim of Retaliatory Transfer*

■ Although plaintiff's complaint was screened when it was filed and allowed to proceed on the ground that it stated a claim of retaliatory transfer when construed liberally, defendants argue that the only retaliatory act plaintiff pleaded was the issuance of conduct reports. In their view, plaintiff's subsequent transfer to Waupun was merely part of the injury resulting from these reports. Defendants argue that because plaintiff did not allege that any of the defendants had any role in the issuance of the conduct reports, the complaint fails to state a claim of retaliation against them. In addition, defendants argue, plaintiff failed to allege either that defendants knew of plaintiff's involvement in two other suits before they made the decision to transfer him or that they were motivated by any knowledge they may have had.

Fed.R.Civ.P. 8(a) requires a complaint to state only those "bare minimum facts necessary to put the defendant on notice of the claim so that he can file an answer." *Higgs v. Carver*, 286 F.3d 437, 439 (7th Cir.2002) (citing *Beanstalk Group, Inc. v. AM General Corp.*, 283 F.3d 856, 863 (7th Cir.2002)). It requires nothing more, not even an allegation of a chronology of events from which retaliation may be inferred. *Walker v. Thompson*, 288 F.3d 1005, 1009 (7th Cir.2002) (citing *Higgs*, 286 F.3d at 439). An inmate satisfies the pleading requirement if he specifies both the suit and the act of retaliation in enough detail to allow the defendant to file an answer. *Higgs*, 286 F.3d at 439.

Defendants mischaracterize plaintiff's complaint as alleging that the issuance of

conduct reports was the only retaliatory act. The complaint chronicles a series of events, including plaintiff's transfer to the Waupun facility, and alleges that plaintiff has suffered from *ongoing* retaliation for his participation in other civil suits. Although plaintiff does not state specifically that the transfer was retaliatory, this claim can be inferred from the broad language of the complaint. Plaintiff's ten-page complaint included the statement that "[d]efendants' actions ha[ve] cause[d] plaintiff to fear [for] his safety, due to his testimony in two federal courts against the employees and correctional officers, such as *Cedric Johnson v. Dr. Daley* Case No. 98–C–0518 and Rufus *West v. Warden Gary McCaughtry* Case No. 97–C–0070." Plaintiff described his transfer to the Waupun facility and each defendant's involvement in that transfer. This was sufficient to state a claim for retaliation against defendants. *Higgs*, 286 F.3d at 439.

Defendants argue that the complaint must fail because plaintiff failed to allege that they knew of plaintiff's involvement in two other suits before they made the decision to transfer him. They contend that plaintiff's allegations make it clear that he informed defendants of his participation in other lawsuits only *after* they made the transfer decision. Accordingly, they argue, plaintiff has no basis for a claim that defendants were retaliating against him.

Defendants assume that plaintiff could show that defendants knew about his litigation activities only by hearing about them directly from him. Although plaintiff cannot succeed unless he can prove that defendants knew of his involvement in other litigation before they acted, he is not required to allege facts in his complaint that would establish every aspect of the claim's validity. *Higgs*, 286 F.3d at 439. Plaintiff stated a legally viable claim of retaliation. Defendants are not entitled to a dismissal of plaintiff's complaint.

## B. *Mootness*

■ Defendants argue that they are authorized to transfer only those prisoners currently incarcerated at the Columbia facility and for that reason would be unable to provide the injunctive relief plaintiff is seeking, which is a transfer from Waupun. In addition, defendants argue, their liability for money damages should not extend to any injury incurred after March 2003, when a committee at the Waupun facility made an independent decision to retain plaintiff at Waupun. Defendants observe correctly that a case is moot if a decision will not affect the current legal relations of the parties. *DeFunis v. Odegaard*, 416 U.S. 312, 317, 94 S.Ct. 1704, 40 L.Ed.2d 164 (1974).

■ A federal court cannot exercise subject matter jurisdiction over a claim unless the litigant asserting the claim has suffered, or is threatened with an actual injury for which the defendant is responsible and which can be redressed by a favorable decision. *Lewis v. Continental Bank Corp.*, 494 U.S. 472, 477, 110 S.Ct. 1249, 108 L.Ed.2d 400 (1990). When the relief sought would no longer make a difference to the legal interests of the parties, a case or relevant portion thereof becomes moot. *DeFunis*, 416 U.S. at 319–20, 94 S.Ct. 1704; *Gray v. Dane County*, 854 F.2d 179, 185 (7th Cir.1988) (citing "the familiar proposition that 'federal courts are without power to decide questions that cannot affect the rights of litigants in the case before them' "). However, a case is moot only when none of the remedies plaintiff sought are available. *See, e.g., DeFunis*, 416 U.S. at 317, 94 S.Ct. 1704 (case moot where injunctive relief would no longer remedy injury and plaintiff sought only injunctive relief); *Central Soya Co., Inc. v. Consolidated Rail Corp.*, 614 F.2d 684, 687–88 (7th Cir.1980). A case or controversy continues to exist despite a limita-

tion in available damages. *Affholder, Inc. v. Preston Carroll Co., Inc.*, 866 F.2d 881, 884–85 (6th Cir.1989) (damage limitation agreement did not render suit moot). In this case, plaintiff has requested any relief that the court deems just. If he succeeds on his claim of retaliation, it is undisputed that he could recover money damages for injuries he may have sustained prior to March 2003. Therefore, the *case* is not moot.

### C. *Judgment as a Matter of Law*

■ Generally, prisoners do not have a constitutional right to placement in a particular institution. *Meachum v. Fano*, 427 U.S. 215, 96 S.Ct. 2532, 49 L.Ed.2d 451 (1976) (due process clause does not limit inter-prison transfer even when new institution is much more disagreeable). They can be moved from institution to institution without any procedural formalities, such as hearings, so long as the transfer does not amount to an "atypical, significant deprivation." *Sandin v. Conner*, 515 U.S. 472, 486, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995). The situation is different, however, when an inmate contends that the defendant prison officials transferred him as a way of retaliating against him for his exercise of a federal constitutional right. Such a contention states a federal claim. *Higgason v. Farley*, 83 F.3d 807, 810 (7th Cir.1996) (prisoner transferred for exercising his right of access to the courts has claim under 42 U.S.C. § 1983); *Pratt v. Rowland*, 65 F.3d 802, 807 (9th Cir.1995) (retaliation claim survives *Sandin* ).

A prisoner who believes he has been transferred for a retaliatory reason may initiate a lawsuit by filing a complaint in which he alleges the nature of the act in which he engaged, the act of retaliation and the government agent or agents who took the retaliatory action. If he alleges this much, he will be allowed to proceed unless it is obvious from his allegations that he has no case. It may be obvious,

for example, that the action in which the plaintiff engaged is not protected by the First Amendment. (Filing a lawsuit challenging a condition of confinement is a protected activity; speaking to a guard in a threatening manner is not. *Ustrak v. Fairman*, 781 F.2d 573, 580 (First Amendment not violated by prison regulation prohibiting inmate disrespect toward employees)).

■ Also, a court may deny an inmate leave to proceed if the allegedly retaliatory act is not one that could be said to have had the effect of deterring an inmate "of ordinary firmness" from engaging in similar activity. *Pieczynski v. Duffy*, 875 F.2d 1331, 1333 (7th Cir.1989) (holding that harassment of employee for political beliefs is actionable "unless the harassment is so trivial that a person of ordinary firmness would not be deterred from holding or expressing [his] beliefs"); *see also Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001) (in prison setting, " 'the action taken [must be] sufficient to deter a person of ordinary firmness from exercising his [constitutional] rights' ") (quoting *Allah v. Seiverling*, 229 F.3d 220, 225 (3d Cir. 2000)). In this case, it is not necessary to decide what action might be so trivial as not to amount to retaliation. A transfer to an institution in which a person has specific reasons to fear for his life and safety is not a trivial matter.

■ As easy as it is to state a viable claim at the outset of litigation, an inmate cannot rest on his original allegations as the lawsuit progresses. If the defendants move for summary judgment, the plaintiff must be able to produce evidence that his actions were protected by the First Amendment. The fact that a court allowed him to proceed on his claim does not mean that the court has made a final determination that his activity was protected; additional evidence may reveal reasons

why it was not. If the plaintiff can make the showing, he must then come forward with evidence that the named defendants took some adverse action against him. In addition, to establish retaliation, the inmate must show that he has evidence from which a reasonable jury could find that the defendants' knowledge of his protected activity was a *substantial* or *motivating* factor in their decision to take an adverse action against him. *Mt. Healthy Board of Education v. Doyle,* 429 U.S. 274, 287, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977) (burden properly placed upon non-tenured school teacher to show that his protected free speech activities were motivating factor in school board's decision not to rehire him).

In *Mt. Healthy,* 429 U.S. 274, 97 S.Ct. 568, the Court treated the words motivating and substantial as interchangeable, *id.* at 287, 97 S.Ct. 568. Many courts do the same. In another case, the Court used only the word motivating to describe the role the factor must play in the challenged decision. *Arlington Heights v. Metropolitan Housing Corp.,* 429 U.S. 252, 270, 97 S.Ct. 555, 50 L.Ed.2d 450 (1977) ("Respondents simply failed to carry their burden of proving that discriminatory purpose was a motivating factor in [appellant's] decision."). *See also Hunter v. Underwood,* 471 U.S. 222, 225, 105 S.Ct. 1916, 85 L.Ed.2d 222 (1985) (affirming appellate court's determination that discriminatory intent was "a motivating factor" in Alabama's adoption of constitutional provision for disenfranchisement of persons convicted of misdemeanors and finding provision violative of Fourteenth Amendment's guarantee of equal protection); *Foster v. Arthur Andersen, LLP,* 168 F.3d 1029, 1033 (7th Cir.1999) (holding that plaintiff asserting a claim under the Americans with Disabilities Act must show that her disability was "a motivating factor" in decision to dismiss her).

In *Price Waterhouse v. Hopkins,* 490 U.S. 228, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989), however, the justices read substantial and motivating as distinct from one another. The plurality would have required an employee in a Title VII employment discrimination case to prove that her sex played a "motivating" part in an employment decision, *id.* at 250, 109 S.Ct. 1775 ("The plaintiff who shows that an impermissible motive played a motivating part in an adverse employment decision has thereby placed upon the defendant the burden to show that it would have made the same decision in the absence of the unlawful motive."). The two concurring justices would have required plaintiff to prove that the impermissible motive played a "substantial" part in the decision. *Id.* at 260, 109 S.Ct. 1775 (White, J., concurring); *id.* at 277, 109 S.Ct. 1775 (O'Connor, J., concurring). *See Desert Palace v. Costa,* 539 U.S. 90, 123 S.Ct. 2148, 2150–51, 156 L.Ed.2d 84 (2003) (discussing dispute). It seems fair to infer that when Congress amended Title VII and used the word "motivating, it agreed with the concurring justices' belief that motivating is an easier standard to prove than substantial." *See* 42 U.S.C. § 2000e–2(m) ("an unlawful employment practice is established when the complaining party demonstrates that [a protected criterion such as sex] was a motivating factor for any employment practice . . .").

The Court has never had occasion to say whether it intended any distinction between the two words in First Amendment retaliation cases. Until it does, I believe that the practical course is to treat the words "substantial or motivating" as essentially the same so far as the plaintiff's burden is concerned. I would instruct a jury that its task is to determine whether the plaintiff has proved that his engagement in protected activity was one of the reasons for the defendants' decision.

*Price Waterhouse,* 490 U.S. at 250, 109 S.Ct. 1775. This definition avoids the potential confusion of trying to explain the requisite degrees of motivation or substantiality. It is a definition a lay jury can understand and apply in deciding whether a plaintiff has made his required showing. In my view, it incorporates both substantial and motivating: a factor that is one of the reasons for a decision is certainly not an insubstantial one and presumably would have motivated the decision.

Therefore, to prove retaliation, a prisoner plaintiff will have to show that plaintiff's protected activity was one of the reasons for the defendant prison officials' decision to take an adverse action against him. If he shows merely that defendants gave it fleeting thought but quickly dismissed it or that it was the subject of a random remark to which the defendants gave no weight, he will not have proven that it was a reason for the defendants' decision. However, if he can prove, for example, that the defendants thought that the act they took would be a good idea for institutional purposes *and* because it might deter the plaintiff from filing lawsuits, a jury could find that the prohibited consideration was one of the reasons for their decision and therefore, that they acted out of a desire to retaliate.

A prisoner plaintiff may make this showing by producing evidence of a defendant's comments indicating that the defendant subjected the plaintiff to adverse treatment because of the plaintiff's protected activity. For example, if the plaintiff has a witness who heard a defendant say that he wanted to punish the plaintiff for filing a complaint against him, the plaintiff would have direct evidence of retaliation.

■■■ Direct evidence is difficult to obtain. Defendants rarely admit that they want to retaliate against someone. It is well established that a plaintiff cannot establish retaliation simply by showing that the protected activity happened before the

defendants took their action, *see, e.g., Sitar v. Indiana Dept. of Transportation,* 344 F.3d 720, 728 (7th Cir.2003) (noting that one event's following closely upon another is not dispositive in proving that the first act caused the second); *see also Stone v. City of Indianapolis Public Utilities Division,* 281 F.3d 640, 642 (7th Cir.2002) ("mere temporal proximity between the filing of the charge of discrimination and the action alleged to have been taken in retaliation for that filing will rarely be sufficient in and of itself to create a triable issue"). An adverse act following hard on the heels of the exercise of a protected right might be suspicious but it would not be enough by itself to allow a reasonable jury to find that it was a reason for the defendants' decision to take an adverse action against the plaintiff. The plaintiff must be able to point to other reasons that suggest a relationship between the two events. *Sauzek v. Exxon Coal USA, Inc.,* 202 F.3d 913, 918 (7th Cir.2000). *But see Johnson v. City of Fort Wayne,* 91 F.3d 922, 939 (7th Cir.1996) (holding that plaintiff made prima facie showing of retaliation when his only evidence was that city's adverse employment action came just two weeks after he filed complaint of discrimination).

In employment cases involving allegations of retaliation for complaining about employment discrimination, a plaintiff can proceed using a form of the *McDonnell Douglas* test. *Stone,* 281 F.3d at 642 (plaintiff entitled to summary judgment if he shows that (1) he made a complaint about discrimination; (2) only he and no other similarly situated employee who did not complain (3) was subjected to an adverse action even though (4) he was performing his job in a satisfactory manner). It would be difficult for a prisoner to use a test that required him to show that other prisoners were similarly situated, that they were not subjected to the same kind of

adverse action and that he had done nothing to warrant disciplinary action. If he did make the required showing, defendants would have to do no more than articulate reasons for their decision and the plaintiff would have the opportunity to show that the reasons that defendants gave were not the true reasons for their action. *Id.* at 644.

Assuming that a prisoner plaintiff is employing the direct method of proof and has shown that he engaged in protected activity and that his protected activity was a reason for defendants' decision to take an adverse action against him, one would expect that under *Mt. Healthy,* 429 U.S. 274, 97 S.Ct. 568, the next step would be to shift the burden of proof to the defendants to show by a preponderance of the evidence that they would have taken the same disciplinary action even in the absence of the protected activity. In *Mt. Healthy,* the Supreme Court held that

> Initially, in this case, the burden was properly placed upon [plaintiff] to show that his conduct was constitutionally protected, and that this conduct was a "substantial factor"—or to put it in other words, that it was a "motivating factor" in [defendants'] decision ... [Plaintiff] having carried that burden, however, the District Court should have gone on to determine whether [defendant] had shown *by a preponderance of the evidence* that it would have reached the same decision ... even in the absence of the protected conduct.

*Id.* at 287, 97 S.Ct. 568 (emphasis added).

A number of circuits apply this burden-shifting framework to prisoner claims of First Amendment retaliation. *See, e.g., Graham v. Henderson,* 89 F.3d 75, 80 (2d Cir.1996) (at summary judgment stage, "[o]nce the burden shifts to the defendants, [plaintiff's] presentation creates a triable issue of fact unless the defendants proffer an alternative basis for disciplining

[plaintiff] that would apply to him even if his version of events were true"); *see also Rauser,* 241 F.3d at 333 (citing *Mt. Healthy,* 429 U.S. at 287, 97 S.Ct. 568); *Thaddeus–X v. Blatter,* 175 F.3d 378, 399 (6th Cir.1999) ("If the defendant can show that he would have taken the same action in the absence of the protected activity, he is entitled to prevail on summary judgment.") (*Thaddeus–X* injects a little confusion into the discussion: the court speaks about the burden of *production* shifting to the defendant but then suggests it is talking about shifting the burden of *persuasion* when it cites *Mt. Healthy* and says that the defendant can prevail if he shows he would have taken the same action in the absence of the protected motive.) However, in prisoner suits, some courts require the plaintiff to bear the ultimate burden of proving that "but for" the unconstitutional retaliatory motive, the defendants would have acted differently. *See, e.g., Woods v. Smith,* 60 F.3d 1161, 1166 (5th Cir.1995) ("To assure that prisoners do not inappropriately insulate themselves from disciplinary actions by drawing the shield of retaliation around them," a prisoner claimant must "be prepared to establish that *but for* the retaliatory motive the complained of incident ... would not have occurred.") (emphasis added); *Goff v. Burton,* 7 F.3d 734, 737 (8th Cir.1993) (noting that Eighth Circuit has rejected use of *Mt. Healthy* in prisoner cases in favor of rule requiring prisoner to prove that "transfer would not have been made 'but for' the prisoner's litigation activities") (citing *Ponchik v. Bogan,* 929 F.2d 419, 420 (8th Cir.1991)); *McDonald v. Hall,* 610 F.2d 16, 18 (1st Cir.1979) ("Plaintiff must prove that he would not have been transferred 'but for' the alleged reason.") (citing *Mt. Healthy* ).

The law in this circuit is a little murky. The court of appeals has not been consistent in explaining the allocation of the

burdens in non-prisoner retaliation cases. In some cases, the court of appeals' statements suggest that the plaintiff must shoulder the burden of proving not only that his injury was a substantial or motivating factor in causing the defendants to take an adverse action against him but also that the defendants would not have taken the allegedly retaliatory action "but for" the constitutionally protected activity. *See, e.g., Abrams v. Walker,* 307 F.3d 650, 654 (7th Cir.2002) (holding in a case involving an alleged retaliatory act against a motorist by a police officer that "even if a defendant was 'brimming over with unconstitutional wrath' against a § 1983 plaintiff, that plaintiff cannot prevail unless he or she establishes that the challenged action would not have occurred 'but for' the constitutionally protected conduct") (citing *Button v. Harden,* 814 F.2d 382, 383 (7th Cir.1987) (public school teacher had "to prove not only that his federal rights were violated but also that, had it not been for the violation, the injury would not have occurred")); *see also Galdikas v. Fagan,* 342 F.3d 684, 696 (7th Cir.2003) (reading *Abrams* to say that factor is not "substantial or motivating" unless defendants would not have taken challenged action but for that factor). In other cases, and in *Abrams* and *Galdikas* themselves, however, the court has held that once the plaintiff has made his showing, the burden shifts to the defendant to *prove by a preponderance of the evidence* that he would have taken the same action regardless of the plaintiff's protected conduct. *Galdikas,* 342 F.3d at 696 (if plaintiff meets burden of showing that challenged action would not have occurred "but for" the constitutionally protected conduct, " 'the burden shifts to the defendant, who must show by a preponderance of the evidence that he would have taken the same actions even in the absence of the protected conduct' ") (citing *Abrams,* 307 F.3d at 654). (My reading of the seemingly contradictory statements in *Abrams* and *Galdikas* is that the court is merely saying that if the plaintiff makes his showing and defendants do not come back with any evidence, he will have established that he would not have been subjected to the adverse action but for his protected activity.)

In *Vukadinovich v. Board of School Trustees,* 278 F.3d 693, 699 (7th Cir.2002), the court of appeals shifted the burden of proof to the defendants to show that they would have fired the plaintiff high school teacher even if he had not written letters to the local paper attacking the school board and the superintendent. "If [plaintiff] can establish the first two prongs [that his speech was constitutionally protected and that it motivated defendants' adverse action], the burden shifts to the defendants to prove by a preponderance of the evidence that [plaintiff] would have been terminated regardless of his protected speech." However, *Vukadinovich* clouded the waters a bit. The court described the analysis of the non-prisoner plaintiff's claim of retaliation as consisting of three steps. The court must determine whether (1) the plaintiff's speech was constitutionally protected; (2) the defendants' actions were motivated by the plaintiff's speech; and (3) the defendants can show that they would have taken the same step in the absence of plaintiff's exercise of his First Amendment rights. *Vukadinovich,* 278 F.3d at 699. So far, this is a straightforward application of *Mt. Healthy.* However, the court added another wrinkle: "If the defendants carry that burden, Vukadinovich bears the burden of persuasion to show that the defendants' proffered reasons were pretextual and that discrimination was the real reason the defendants fired him." *Id.* (citing *King v. Preferred Technical Group,* 166 F.3d 887, 893 (7th Cir.1999) (holding in Title VII case that plaintiff must show pretext by preponderance of evidence under *McDonnell Doug-*

*las* framework because burden of persuasion does not shift from plaintiff in such cases)); *see also Rasche v. Village of Beecher,* 336 F.3d 588, 597 (7th Cir.2003) (if defendant village officials can show that they would have taken same action in absence of plaintiff business owners' exercise of First Amendment rights, then plaintiff bears burden of persuasion to show defendants' proffered reasons pretextual and retaliation real reason for defendants' action) (citing *Vukadinovich,* 278 F.3d at 699).

In the one case involving the allocation of burdens in the prison setting, *Babcock v. White,* 102 F.3d 267, 275 (7th Cir.1996), the court of appeals remanded the case to the district court with directions to require the defendant prison official to show that the plaintiff prisoner would have remained where he was even if he had not used the inmate grievance system and filed lawsuits. Despite the variations in approach in retaliation cases in general, I believe that I must follow *Babcock* in prisoner cases. The court of appeals has never repudiated the holding in that case; the holding is directed specifically to prisoner cases; and it follows the holding in *Mt. Healthy,* 429 U.S. 274, 97 S.Ct. 568. Under this approach, the plaintiff has the burden of showing by a preponderance of the evidence that (1) he was engaging in activity protected by the First Amendment and (2) his activity was one of the reasons for defendants' decision to take action against him. If the plaintiff can meet this standard, the burden of persuasion will shift to the defendants to prove by a preponderance of the evidence that they would have taken the same action anyway.

Unlike the Court of Appeals for the Eighth Circuit, I do not believe there is any reason to deviate from this standard in the prison context. In *Goff,* 7 F.3d at 738, the Eighth Circuit reasoned that prison officials should not bear a burden of persuasion because their acts are presumed to be legal and constitutional. In my opinion, this reasoning ignores the *Mt. Healthy* analysis, in which the burden never shifts to the defendants to prove anything unless the plaintiff can first prove that his exercise of his First Amendment rights was one of the reasons for the defendants' decision to retaliate against him. In other words, the defendants will not bear any burden until the plaintiff has proved that the defendants' actions were unconstitutionally motivated. Even under a deferential approach, I see no reason for a court to defer to unconstitutionally motivated decisions by prison officials. *See NLRB v. Transportation Management Corp.,* 462 U.S. 393, 403, 103 S.Ct. 2469, 76 L.Ed.2d 667 (1983) (holding that once employee has shown that his discharge was based in part on his employer's hostility to union, "[i]t is fair that [employer] bear the risk that the influence of legal and illegal motives cannot be separated, because he knowingly created the risk and because the risk was created not by innocent activity but by his own wrongdoing") (cited in *Price Waterhouse,* 490 U.S. at 250, 109 S.Ct. 1775). Furthermore, prison officials have the opportunity under *Babcock* to prove that despite the unconstitutional retaliatory motive, they would have taken the same action. Therefore, burden shifting in the retaliation context comports with the general rule against excessive judicial involvement in everyday prison management. *See, e.g., Babcock,* 102 F.3d at 275 (noting that plaintiff has no claim if defendants can show that plaintiff would have been denied transfer even if he had not engaged in First Amendment activities and suggesting that court can give appropriate deference to prison officials when evaluating the reasons that they put forth to justify the actions alleged to be retaliatory) (citing *Sandin v. Conner,* 515 U.S. 472, 482, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995)).

The holding in *Babcock* comports with the Supreme Court's decision in *Crawford–El v. Britton*, 523 U.S. 574, 118 S.Ct. 1584, 140 L.Ed.2d 759 (1998). In that case, the Court rejected the idea that a prisoner plaintiff bears a heightened burden in prosecuting a claim of retaliation, such as having to prove the existence of the retaliatory motive by clear and convincing evidence. *Id.* at 574, 118 S.Ct. 1584. The Court was unpersuaded by the arguments that "because an official's state of mind is 'easy to allege and hard to disprove,' insubstantial claims that turn on improper intent may be less amenable to summary disposition than other types of claims against government officials," *id.* at 585, 118 S.Ct. 1584, and that such claims implicate obvious concerns with social costs of subjecting public officials to discovery and trial, as well as liability for damages. *Id.* The Court concluded that it is up to Congress, not the courts, to decide whether plaintiffs in prisoner retaliation cases should bear a heightened burden. *Id.* at 597, 118 S.Ct. 1584.

■■■ With this background, I turn to plaintiff's claim of retaliation and defendants' motion for summary judgment. Defendants assert that they are entitled to judgment as a matter of law for several reasons. First, the evidence demonstrates that they could not have had a retaliatory motive because plaintiff did not inform them of his involvement in other litigation until the program review hearing or later. Second, plaintiff would have been transferred even if he had not participated in other suits. Third, the acts of defendants Douma, Kestin and Kingston were not the proximate cause of the transfer.

Although defendants filed the motion for summary judgment, they do not have the burden of showing at this stage that they were not motivated by a desire to retaliate against plaintiff when they decided to transfer him. It is up to plaintiff to show that he could adduce sufficient evidence at trial to allow a jury to find that defendants were motivated by a desire to retaliate against him. Plaintiff is "under an obligation to respond to [defendants'] motion in a timely fashion and to place before the court all materials [he] wishes to have considered when the court rules on the motion." *Cowgill v. Raymark Industries, Inc.*, 780 F.2d 324, 329 (3d Cir.1985). He must "show through *specific evidence* that a triable issue of fact remains." *Liu v. T & H Machine, Inc.*, 191 F.3d 790, 796 (7th Cir.1999) (citations omitted and emphasis added). At this stage, it is not enough for plaintiff to state his subjective belief that he was the subject of retaliation. *Vukadinovich*, 278 F.3d at 700 (citing *Johnson v. University of Wisconsin–Eau Claire*, 70 F.3d 469, 480 (7th Cir.1995)). If he cannot make the showing of retaliation, the court may grant summary judgment to the moving party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (when party moving for summary judgment does not bear burden of proof, he need not produce evidence showing absence of genuine issue of material fact to succeed on motion).

The only "evidence" plaintiff submitted in opposition to defendants' motion for summary judgment is a transcript of his prior testimony against the correctional officers at the Waupun facility and an affidavit in which he does not address the substantive facts relevant to this case. The undisputed facts reveal that there was wide publicity about plaintiff's successful lawsuit in Wisconsin newspapers that defendants may have known about before they made their decision to transfer plaintiff. However, plaintiff has cited no evidence that would support his allegation that defendants knew about these articles or knew about his prior lawsuit.

A genuine issue of fact exists only where there is sufficient evidence favoring the

non-moving party to allow a jury to find in favor of the non-moving party. *Weeks v. Samsung Heavy Industries Co. Ltd.*, 126 F.3d 926, 933 (7th Cir.1997). Without speculating, a jury could not find from the existence of the newspaper articles that defendants knew about plaintiff's lawsuit. Although plaintiff's case fails at this point, it is unlikely it would survive defendants' motion even if plaintiff had evidence of defendants' knowledge of his protected activity. Plaintiff has adduced no evidence from which a reasonable jury could infer that defendants acted with a retaliatory motive. All he has is the fact that several years after he engaged in civil litigation defendants transferred him to another prison over his objections. No reasonable jury could find from the evidence plaintiff has adduced that retaliation was a reason for defendants' decision to transfer him to Waupun.

### ORDER

IT IS ORDERED that the motion for summary judgment of defendants Phil Kingston, Tim Douma, Jack Kestin and Bill Puckett is GRANTED. The Clerk of Court is directed to enter judgment in favor of all defendants and close this case.