**Donnie E. BURNS, Plaintiff,**

v.

**HEAD JAILOR OF LaSALLE COUNTY JAIL; Mark Turner, Jailor & D. Gonzalos, Defendants.**

**No. 83 C 5715.**

United States District Court, N.D. Illinois, E.D.

Jan. 5, 1984.

Donnie E. Burns, pro se.

No appearance for defendants.

## MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

Donnie E. Burns ("Burns") brings this 42 U.S.C. § 1983 ("Section 1983") pro se complaint for damages against the Head Jailor of the LaSalle County Jail ("the Jail"), Mark Turner ("Turner"), a guard at the Jail, and Dr. Gonzalos ("Gonzalos"), a medical doctor employed by the Jail. Burns seeks leave to file his complaint in forma pauperis and asks appointment of counsel.

### Facts[1]

On January 6, 1982 officers from LaSalle County took custody of Burns and brought him to the Jail. Before his arrest Burns was receiving ongoing out-patient treatment for "angina pectoris" and "anxiety neurosis" from the Danville, Illinois Veterans' Administration ("VA") Hospital. Burns carried medication prescribed for those conditions. Turner, however, refused Burns permission to have in his possession either the librium or the valium prescribed for his "anxiety neurosis." Next day Burns unsuccessfully appealed Turner's decision to the Head Jailor.

At Burns's request a doctor visited him at the Jail on January 8. That doctor allowed Burns to keep prescriptions for two of the medicines prescribed for his heart condition, but rescinded prescriptions for the librium, valium and nitroglycerin tablets. He told Burns the nitroglycerin duplicated another of the heart medications Burns was receiving. He also said Burns would be better off without the other two drugs because they were habit-forming narcotics.

Unhappy with the doctor's decision, Burns refused to take any medication for the next five days. He then ended that "medication strike" on the advice of his attorney. Burns complains:

(1) that defendants were at times late in delivering his medicine to him; and

(2) of the location of his cell, situated in the back of the cell block away from the jailors' office and the medical room.

Burns asserts if he had experienced a seizure, the jailors would not have been able to respond quickly.

As a result of his incarceration, Burns missed his regular 90-day examination scheduled for March 25, 1982 at the VA Hospital. Concerned, Burns told his attorney about his desire to see a heart specialist. At the suggestion of a legal services organization contacted by Burns's wife, the attorney filed a June 3, 1982 motion requesting Burns be given permission to do so. That motion was denied.

On June 12, 1982 Gonzalos examined Burns in his office and gave him an EKG. Next week Burns was transferred from the Jail to the Illinois Department of Corrections. Burns did not receive the results of his examination by Gonzalos until almost a year later.

---

1. This section simply accepts Burns's allegations as true for current purposes. No *findings* are implied by such arguendo acceptance.

## Burns's Contentions

[1] Burns claims defendants deprived him of adequate medical care in violation of his rights under the Eighth Amendment.[2] To state a claim for the deprivation of medical care, a prisoner must allege "deliberate indifference to serious medical needs." *Estelle v. Gamble,* 429 U.S. 97, 104, 97 S.Ct. 285, 291, 50 L.Ed.2d 251 (1976).[3] In applying that test the court considers such factors as the severity of the medical problem, the potential for harm if medical care is denied or delayed and whether any such harm actually resulted from the lack of medical attention. *See Thomas v. Pate,* 493 F.2d 151, 158 (7th Cir.1974), *cert. denied,* 423 U.S. 877, 96 S.Ct. 149, 46 L.Ed.2d 110 (1975). Judged by those standards, Burns's complaints about his medical care do not raise a claim of constitutional dimension cognizable under Section 1983.

Burns first challenges defendants' decision to take him off certain medications, because he "suffered great medical anguish and severe physical damages as a result of not being given the proper medication." But the propriety of a certain course of medical treatment is not a proper subject for review in a civil rights action. Disagreements between an inmate and his prison physician as to the quality of medical care do not constitute the deliberate indifference to serious medical needs required to turn a claim of medical malpractice into a constitutional tort. *Ferranti v. Moran,* 618 F.2d 888, 890–91 (1st Cir.1980); *Smart v. Villar,* 547 F.2d 112, 114 (10th Cir.1976). Exercising his professional judgment, a doctor made the decision to discontinue Burns's prescription for certain drugs. Although Burns disputes the decision, his quarrel is not actionable under Section 1983.

Burns also cavils at his cell placement, because he says jailors would not have had time to get his nitroglycerin to him if he had experienced a seizure. But the mere possibility of remote or speculative future injury will not support a Section 1983 claim for damages. *See Reichenberger v. Pritchard,* 660 F.2d 280, 285 (7th Cir.1981). Based on purely conjectural allegations of injury, Burns's complaint about cell location is legally insufficient.

Finally Burns assails defendants' failure to provide him medicine when needed. He alleges at times defendants either ran out of medicine or were late in delivering his medicine to him. No inadvertent failure to provide adequate medical care shows deliberate indifference. *See Gibson v. McEvers,* 631 F.2d 95, 98 (7th Cir.1980). Burns alleges only an occasional oversight, which he himself attributes to defendants' negligence. Moreover, as with Burns' other claims of medical mistreatment, he fails to allege any harm from defendants' acts or omissions. In this Circuit resulting harm is an essential element to a claim of constitutionally inadequate medical care. *Thomas,* 493 F.2d at 158.

Accordingly this Court finds Burns's Complaint "frivolous" in the sense of *Wartman v. Milwaukee County Court,* 510 F.2d 130, 134 (7th Cir.1975). It denies Burns's motions for leave to file in forma pauperis and for appointment of counsel.

2. Although Burns affixes his claim to the Eighth Amendment, it is more properly analyzed under the Due Process Clause of the Fourteenth Amendment, because he was a pretrial detainee at the time of the alleged deprivation. *See Bell v. Wolfish,* 441 U.S. 520, 536 n. 16, 99 S.Ct. 1861, 1872 n. 16, 60 L.Ed.2d 447 (1979). Of course in a strict sense the claim must be grounded in the Fourteenth Amendment in any event, for defendants are *state* actors.

3. *Estelle's* "deliberate indifference" standard also applies to test the sufficiency of a detainee's claim of improper medical care. *See Wood v. Worachek,* 618 F.2d 1225, 1232–33 (7th Cir. 1980); *Hampton v. Holmesburg Prison Officials,* 546 F.2d 1077, 1079–80 (3d Cir.1976).