986 F.2d 1424
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
Jesse M. HATCH, Plaintiff/Appellant,
v.
Michael O'LEARY, Debbie Gregor, and One Unknown Optometrist,
Defendants/Appellees.
 No. 92-1755.
 United States Court of Appeals, Seventh Circuit.
 Submitted Feb. 18, 1993.*
Decided March 2, 1993.
 
 Before BAUER, Chief Judge, and EASTERBROOK, and RIPPLE, Circuit Judges.
 
 ORDER
 
 1
 Jesse M. Hatch, an inmate at Stateville Correctional Center, appeals the district court's summary judgment order mandating entry of dismissal of the case "in its entirety." Upon consideration of the parties' briefs and the record in this case, we AFFIRM for the reasons stated in the attached district court order.
 
 ATTACHMENT
 IN THE UNITED STATES DISTRICT COURT
 FOR THE NORTHERN DISTRICT OF ILLINOIS
 EASTERN DIVISION
 
 2
 Jesse M. Hatch, Plaintiff,
 
 
 3
 v.
 
 
 4
 Michael O'Leary, et al., Defendants.
 
 
 5
 No. 85 C 8579.
 
 
 6
 March 4, 1992.
 
 MEMORANDUM OPINION AND ORDER
 
 7
 Jesse Hatch filed suit seeking damages against prison officials under 42 U.S.C. § 1983. After extensive skirmishing and one appeal, only one claim remains. Hatch alleges in his pro se amended complaint that former Statevile Correctional Center Warden Michael O'Leary and nurse Debbie Gregor violated his eighth amendment right to adequate medical care by failing to ensure that he received a proper pair of prescription eyeglasses. The parties have filed cross-motions for summary judgment.
 
 
 8
 In 1983, Hatch, while confined at the Pontiac Correctional Center, began noticing his eyes watered when he was reading. A doctor examined him and prescribed eyeglasses. Hatch began having the same problem two years later at Stateville. An optometrist examined him on June 27, 1985 and gave Hatch a new eyeglass prescription.[1] Hatch picked up his new glasses from Gregor on August 29, 1985. When he tried them on, he complained to Gregor that they were too intense for his vision. Gregor counselled Hatch to wear them a few days to allow his eyes to adjust to the new prescription. Hatch continued to have difficulties and related them again to Gregor the next day while she was circulating in the cell house in her capacity as a medical technician. She told him she could not schedule him to see an optometrist because the facility did not have one at that time.
 
 
 9
 Hatch tried to wear the new glasses, but continued to have problems. Because reading with the glasses caused him to suffer headaches and dizziness, he reverted to wearing the glasses he obtained at Pontiac. Over the next four months, Hatch periodically would tell a medical technician about the problems he was having with his glasses. Each time he was told that no optometrist was available. Although Hatch visited a doctor for treatment of a chronic sinus condition several times during this period, he never told the doctor about his problem with his eyes and the glasses the optometrist had prescribed for him.
 
 
 10
 Stateville contracted for in-house optometry services for its inmates. When Hatch's eyes first were examined at Stateville, optometry services were contracted out to Optometric Associates. That contract expired on June 30, 1985 and was not renewed. An agreement was reached with Weiser Optical to take over the Stateville optometry service contract, but, for reasons that do not appear in the record, the contract with Weiser was not signed. Stateville operated without a contract for five months. A contract for optometry services was signed with Dr. Joseph Subak on December 1, 1985. On January 18, 1986, Hatch put in a request to receive an eye exam. He was given his eye exam on April 6 and got a new pair of glasses on July 5, 1986.
 
 
 11
 To prevail under the eighth amendment on a denial of medical care claim, a plaintiff must prove a deliberate indifference to serious medical needs. Estelle v. Gamble, 429 U.S. 97, 104 (1976). Hatch maintains O'Leary demonstrated deliberate indifference "by not having a competent ophthalomogist [sic] to give HATCH a eye examination when he received 'new' eyeglasses from the prison doctors." Amended complaint, Doc. 63, p. 7. He asserts Gregor acted with deliberate indifference "when HATCH immediately complained to her that the eyeglasses were 'too intense' for his vision and LPN GREGOR did not place HATCH on a call-line to be seen by a trained ophthalmologist." Id. Defendants assert that the record in this case fails to demonstrate any deliberate indifference on their part.
 
 
 12
 Summary judgment is appropriate if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The moving party has the initial burden of establishing that there is no genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). Once the moving party has pointed out the lack of a genuine issue of material fact, a non-moving party who bears the burden of proof on an issue may not rest on the pleadings. He instead must come forth with specific facts through affidavits or other materials showing that a genuine issue of material fact exists and requires trial. Id. at 324; Morgan v. Harris Trust and Savings Bank, 867 F.2d 1023, 1026 (7th Cir.1989). A factual dispute is genuine only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). In this case, no reasonable jury could find that defendants acted with deliberate indifference to Hatch's serious medical needs even if it viewed the facts and all reasonable inferences that could be drawn from the facts in the light most favorable to Hatch.
 
 
 13
 Under Estelle, only deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment. 429 U.S. at 104. In this circuit, deliberate indifference "is merely a synonym for intentional or criminally reckless conduct." Salazar v. City of Chicago, 940 F.2d 233, 238 (7th Cir.1991). Deliberate indifference does not encompass negligence, or even gross negligence, as those terms are used in the context of tort cases. Shockley v. Jones, 823 F.2d 1068, 1072 (7th Cir.1987). Thus, an inadvertent failure to provide adequate medical care does not amount to deliberate indifference or punishment within the meaning of the eighth amendment. Estelle, 429 U.S. at 105-06; see Homes v. Sheahan, 930 F.2d 1196, 1200 (7th Cir.1991). Deliberate indifference "implies at a minimum actual knowledge of impending harm easily preventable, so that a conscious, culpable refusal to prevent harm can be inferred from the defendant's failure to prevent it." Duckworth v. Franzen, 780 F.2d 645, 653 (7th Cir.1985). In determining whether a deprivation of medical care amounts to deliberate indifference, the court considers such factors as "the severity of the medical problem, the potential for harm if the medical care is denied or delayed and whether any such harm actually resulted from the lack of medical attention." Burns v. Head Jailor, 576 F.Supp. 618, 620 (N.D.Ill.1984).
 
 
 14
 To properly analyze the sufficiency of Hatch's claim against defendants, it is first necessary to get a proper perspective on the nature of Hatch's medical problem. The records show that Hatch's vision was only slightly impaired. His overall vision in general was good, but he suffered watery eyes during periods of reading. As Hatch stated in his deposition, "I wasn't really having a bad problem with my eyesight, I just needed reading glasses." Plaintiff's dep. at 27. In point of fact, all that Hatch really needed was a new pair of reading glasses. Hatch still had the glasses that were given to him at Pontiac throughout the period relevant to his claim against defendants. In short, Hatch's vision problem was not the sort requiring immediate attention.
 
 
 15
 That is not to say that Hatch's vision problem was not "a serious medical need" within the meaning of Estelle. As defendants argue only that Hatch has failed to show deliberate indifference, the court passes no judgment on whether he has met the objective "serious medical need" prong of the Estelle standard. The severity of Hatch's medical problem is nevertheless important in this case, not so much for the problem itself as for the way in which defendants dealt with it. Whether prison officials unreasonably deny or delay access to medical care is, in part, a function of the symptoms the inmate is exhibiting. See Brownell v. Figel, 950 F.2d 1285, 1291 (7th Cir.1991). This focus required by the subjective nature of the deliberate indifference standard. A defendant could not be found to have intended harm to the plaintiff if circumstances are such that no reasonable person would think that immediate medical care was required for the injury. "[T]he Constitution does not demand that police obtain medical care for prisoners whose injuries appear to be slight but turn out to be serious." Davis v. Jones, 936 F.2d 971, 972 (7th Cir.1991) (emphasis added). Thus, the appearance of the seriousness of a medical need is as important as the reality of the need itself.
 
 
 16
 Hatch seeks to hold Gregor liable because she wrongly dismissed his initial complaint about the glasses by telling him the glasses were new and he would get used to them. Given the circumstances, this advice hardly seems evidence of an intent to harm Hatch. It certainly is not unusual for a patient to experience some vision changes when first switching to a new eyeglass prescription. Gregor had no reason to believe that the doctor had erred in prescribing too strong a lens. Thus, her response to Hatch's complaint that the glasses were "too intense" was not inappropriate.
 
 
 17
 Hatch had one further encounter with Gregor on the following day. When he again complained of difficulty with his new prescription, she informed him that the institution did not at that time have an optometrist available to help him. Again, this response does not evidence any deliberate indifference on Gregor's part. The parties agree that Stateville did not have an optometrist on hand at the time Hatch spoke with Gregor. Nonetheless, Hatch argues that Stateville health care policies required her to refer him to a physician's assistant to schedule a new examination. But that policy only applied if the patient was having severe vision difficulties. Although Gregor presumably could have referred Hatch to a medical doctor or ophthalmologist, he did not present an emergency warranting immediate medical care. Indeed, Hatch makes no showing that he ever even informed Gregor that the glasses were causing headaches and other physical problems. Hatch had no further contact with Gregor after the first day he wore his new glasses. Furthermore, despite the annoying side effects he experienced when he wore the new glasses, Hatch's vision, by his own admission, was not seriously impaired. When he continued to have problems with his new glasses, common sense should have told him to switch back to his old pair until he was able to see an optometrist. Gregor only counselled Hatch to allow time for his eyes to adjust to the new prescription, she did not tell him to continue wearing the glasses even though they caused him to have headaches. Accordingly, finding no evidence of deliberate indifference on her part, the court grants summary judgment for Gregor.
 
 
 18
 Hatch seeks to hold O'Leary liable because he allowed the contract for optometry services to inmates to lapse for a five-month period. Hatch could not get to see an optometrist to have his prescription corrected as a result of this lapse.
 
 
 19
 As the Seventh Circuit noted in Wellman v. Faulkner, 715 F.2d 269, 272 (7th Cir.1983), cert. denied, 468 U.S. 1217 (1984) (citations omitted), "[deliberate indifference] can be demonstrated by proving there are such systemic and gross deficiencies in staffing, facilities, equipment, or procedures that the inmate population is effectively denied access to adequate medical care." In Wellman, the court found that the lack of a staff psychiatrist, along with other deficiencies and evidence of many individual instances of medical maltreatment, sufficient to prove deliberate indifference on a theory of systemic deficiencies in the prison health care system. Hatch's claim against O'Leary is readily distinguishable.
 
 
 20
 The failure to provide a staff psychiatrist to treat mentally disturbed inmates is far graver than a failure to provide an optometrist to examine inmates for eyeglass prescriptions. Furthermore, the psychiatrist position in Wellman was left vacant for over two years with no immediate prospect of filling it. By contrast, the position here was left vacant for a relatively short period of time. Moreover, the evidence shows that the vacancy resulted not so much from dereliction of duty on the part of O'Leary, but rather from the need to make alternative arrangements when negotiations for a replacement contract were not concluded successfully. Under these circumstances, O'Leary's inability to timely consummate a contract for optometry service, while regrettable, scarcely can be attributed to any conscious, culpable refusal to prevent harm to the inmates.
 
 
 21
 Hatch's claim is further undercut by his failure to show any other instances of denial of health care for inmates with serious eye problems during the interim when no optometrist was available. Nor does Hatch show that care would have been unavailable had an inmate demonstrated an critical need for care.[2] Hatch himself never sought help beyond making an occasional inquiry to medical technicians. Hatch asserts it would have been counterproductive for him to bother the medical technicians any further. While his desire not to needlessly antagonize the medical technicians is commendable, other avenues of assistance may have been open to him if his needs were truly urgent. Although Hatch saw a doctor several times for treatment of his sinus condition, he voiced no complaints about the headaches he was having. Nor does he allege that he ever attempted to use the administrative grievance procedure to remedy his problem and bring his need for a reevaluation of his prescription to O'Leary's attention. Hatch cannot prove that the system was grossly deficient in its ability to provide needed care to inmates if the only evidence of injury is his own, and he himself did not exhaust all the means available to him to obtain the medical attention he needed. Accordingly, summary judgment is granted in favor of O'Leary.
 
 
 22
 In conclusion, the court denies Hatch's summary judgment motion and grants that of defendants. The Clerk is directed to enter judgment dismissing this case in its entirety.
 
 
 23
 /s/ Paul E. Plunkett
 
 Honorable Paul E. Plunkett
 District Court Judge
 
 
 *
 After preliminary examination of the briefs, the court notified the parties that it had tentatively concluded that oral argument would not be helpful to the court in this case. The notice provided that any party might file a "Statement as to Need of Oral Argument." See Fed.R.App.P. 34(a); Cir.R. 34(f). No such statement having been filed, the appeal has been submitted on the briefs
 
 
 [1]
 The amended complaint also lists the optometrist as a defendant. Although he is identified in the caption as unknown optometrist, Hatch has since learned his identity. Nonetheless, Hatch never amended the complaint to name him and has made no attempts to have him served. The court therefore expresses no opinion on the merits of Hatch's claim against the optometrist
 
 
 [2]
 Hatch attempts to make a such a showing by pointing to O'Leary's response to his question regarding the availability of alternative services during the interim when Stateville was without a contract for optometry services. O'Leary answered the question by stating that investigation continues. This answer is not an admission, as Hatch contends, that no alternatives were available