**Wade THOMAS, Plaintiff,**

v.

**Twyla WALTON, et al., Defendants.**

**Civil No. 02–969–GPM.**

United States District Court,
S.D. Illinois.

Sept. 19, 2006.

Wade Thomas, Tamms, IL, pro se.

Christopher L. Higgerson, Illinois Attorney General's Office, Springfield, IL, for Defendants.

## MEMORANDUM AND ORDER

MURPHY, Chief Judge.

This matter is before the Court on the motion for partial summary judgment (Doc. 57) brought by Defendants Kenneth Bartley, Jeff Bundren, Terry Caliper, Tim Cook, David Folsom, Paul Hilliard, Mike McClelland, Bret Neighbors, Eric Plott, Frank Rice, Sam Riley, James Russell, Curt Sawyer, Jon Schram,[1] James Studer, Edward Wagoner, Henry Waller, and Derk Wright. For the reasons set forth below, the motion is **GRANTED in part** and **DENIED in part**.

### BACKGROUND

Plaintiff Wade Thomas, an inmate at the closed maximum security facility at the Tamms Correctional Center ("Tamms") in Tamms, Illinois, brings this action pursu-

---

1. The name of Defendant Schram appears as "Schramm" on the Court's docket but is spelled "Schram" in the motion for partial summary judgment. The Court has elected to use the spelling employed by Defendants' attorney.

ant to 42 U.S.C. § 1983 for alleged deprivations of his constitutional rights by Defendants Bartley, Bundren, Caliper, Cook, Folsom, Hilliard, McClelland, Neighbors, Plott, Rice, Riley, Russell, Sawyer, Schram, Studer, Wagoner, Waller, and Wright, all of whom are correctional personnel at Tamms. At issue here are Count 1, Count 2, Count 3, Count 5, Count 7, Count 8, and Count 14 of Thomas's operative complaint (Doc. 38). Count 1 alleges that Russell, Sawyer, Schram, and Waller violated Thomas's Eighth Amendment rights by spraying him with a chemical agent during an inspection of Thomas's cell on September 6, 2000. Count 2 alleges that on September 25, 2000, Bartley and Wright violated Thomas's Eighth Amendment rights by confining him in a dirty cell for over a month. Count 3 alleges that Riley and Wagoner violated Thomas's Eighth Amendment rights by denying him proper psychiatric care after a suicide attempt by Thomas on November 21, 2000. Count 5 alleges that Bundren, Cook, Hilliard, Neighbors, and Studer violated Thomas's Eighth Amendment rights by subjecting him to excessive force and cruel and unusual punishment on December 31, 2000, and that Thomas was denied medical care for the injuries he allegedly suffered during this incident by Caliper until January 10, 2001, in violation of Thomas's Eighth Amendment rights. Count 7 alleges that Hilliard violated Thomas's First Amendment rights by retaliating against him for complaining about the assault by correctional staff that Thomas allegedly suffered on December 31, 2000. Count 8 alleges that on three successive days in April 2001 McClelland violated Thomas's First Amendment rights by retaliating against Thomas for complaining about the conditions of his confinement by refusing to serve Thomas his evening meal tray. Finally, Count 14 alleges that Folsom, Neighbors, Plott, Rice, Sawyer, and Stu-

der violated Thomas's Eighth Amendment rights by subjecting him to excessive force on June 9, 2001.

Russell, Sawyer, Schram, and Waller request summary judgment as to the excessive force claim asserted against them in Count 1 of Thomas's complaint on the grounds that there is no genuine issue for trial as to the claim. Riley and Wagoner likewise seek summary judgment as to the claim of deliberate indifference to Thomas's serious medical needs asserted against them in Count 3 of Thomas's complaint, citing the absence of a genuine issue for trial, as does Caliper with respect to the deliberate indifference claim asserted in Count 5 of the complaint. Hilliard seeks summary judgment as to the retaliation claim asserted against him in Count 7 of Thomas's complaint on the grounds that there is no genuine issue for trial. All eighteen Defendants seek summary judgment as to Thomas's claims against them on the grounds of qualified immunity. Finally, Defendants, all of whom are sued in both their individual and official capacities, request summary judgment as to Thomas's official capacity claims against them.

*DISCUSSION*

**A. Legal Standard**

Summary judgment may be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). In considering a summary judgment motion, a court must review the entire record and draw all reasonable inferences in the light most favorable to the non-moving party. *See NLFC, Inc. v. Devcom Mid–America, Inc.,* 45 F.3d 231, 234 (7th Cir.1995); *Enquip, Inc. v. Smith–McDonald Corp.,* 655 F.2d 115,

118 (7th Cir.1981). On summary judgment a court may not make credibility determinations or weigh the evidence, because these are tasks for a factfinder. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Betaco, Inc. v. Cessna Aircraft Co.,* 32 F.3d 1126, 1138 (7th Cir.1994). In evaluating a motion for summary judgment, "[t]he court has one task and one task only: to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial." *Waldridge v. American Hoechst Corp.,* 24 F.3d 918, 920 (7th Cir.1994).

### B. Motion for Partial Summary Judgment

#### 1. Excessive Force (Count 1)

As discussed, Count 1 of Thomas's complaint alleges that Russell, Sawyer, Schram, and Waller used excessive force against Thomas by spraying him with a chemical agent without warning. The evidence of record shows that during an inspection of Thomas's cell on September 6, 2000, he refused an order to submit to a strip search. *See* Doc. 57, Ex. A, Deposition of Wade Thomas ("Thomas Depo") at 12–13. When a tactical unit was called to Thomas's cell, he then refused three orders to submit to handcuffing, whereupon he was sprayed once or twice in the face with a chemical agent. *See id.* at 13–14. Thomas then submitted to handcuffing. *See id.* at 14. Thomas testified that, although he was permitted to flush his eyes with water two minutes after the incident and was given a shower, his eyes continued to burn for about two hours. *See id.* at 14–16.

■ When a plaintiff brings an excessive force claim under the Eighth Amendment, the relevant inquiry is whether prison officials used force "in a good-faith manner to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian,* 503 U.S. 1, 7, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992) (citing *Whitley v. Albers,* 475 U.S. 312, 320–21, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986)). *See also Thomas v. Stalter,* 20 F.3d 298, 301 (7th Cir.1994); *Lunsford v. Bennett,* 17 F.3d 1574, 1581 (7th Cir.1994). In undertaking this inquiry, several factors are relevant to a court's analysis, including "the need for the application of the force, the amount of force applied, the threat an officer reasonably perceived, the effort made to temper the severity of the force used, and the extent of the injury that force caused to an inmate." *Fillmore v. Page,* 358 F.3d 496, 504 (7th Cir.2004) (citing *DeWalt v. Carter,* 224 F.3d 607, 619 (7th Cir.1999)). *Cf. Hudson,* 503 U.S. at 7, 112 S.Ct. 995; *Whitley,* 475 U.S. at 321, 106 S.Ct. 1078. "Infliction of pain that is 'totally without penological justification' is *per se* malicious." *Fillmore,* 358 F.3d at 504 (quoting *Hope v. Pelzer,* 536 U.S. 730, 737, 122 S.Ct. 2508, 153 L.Ed.2d 666 (2002)).

■ With regard to the use of chemical agents, "it is a violation of the Eighth Amendment for prison officials to use mace or other chemical agents in quantities greater than necessary or for the sole purpose of punishment or the infliction of pain." *Soto v. Dickey,* 744 F.2d 1260, 1270 (7th Cir.1984). *See also Stringer v. Rowe,* 616 F.2d 993, 999 (7th Cir.1980) (stating that the "use of chemical agents such as tear gas and mace by prison officials to subdue individual prisoners, rather than to quell large disturbances, should be more restricted."). In *Soto* the court explained,

> The Supreme Court has never held, nor have we or any other court of appeals, so far as we can determine, that the use of tear gas or a chemical agent is a per se violation of the Eighth Amendment,

whether an inmate is locked in his cell or not. What we, and other courts have held, is that the appropriateness of the use must be determined by the facts and circumstances of the case .... The use of mace, tear gas or other chemical agent of the like nature when reasonably necessary to prevent riots or escape or to subdue recalcitrant prisoners does not constitute cruel and inhuman punishment.

744 F.2d at 1270. In an excessive force case, an inmate's disciplinary history, as well as the fact that an incident involving alleged excessive force concerned an inmate in segregation at a maximum security institution, are relevant to the issue of the appropriateness of the force used. *See Young v. Rabideau,* 821 F.2d 373, 381–82 (7th Cir.1987); *West v. Love,* 776 F.2d 170, 176 (7th Cir.1985).

■ On this record there is no credible evidence suggesting that Russell, Sawyer, Schram, and Waller acted maliciously and sadistically to cause Thomas harm in the face of his repeated refusals to obey direct orders, and the evidence does not show that a chemical agent was used in a quantity greater than necessary to subdue Thomas, assure the safety of the officers present, and secure the prisoner's compliance with an officer's orders. *See Piggie v. Parke,* No. 3:96–CV–458RP, 1997 WL 284796, at *1, *4 (N.D.Ind. Apr.25, 1997) (an inmate's refusal to comply with direct orders to give up a mirror justified the use of a chemical agent). "When an order is given to an inmate there are only so many choices available to the correctional officer. If it is an order that requires action by the institution, and the inmate cannot be persuaded to obey the order, some means must be used to compel compliance, such as a chemical agent or physical force .... Orders given must be obeyed. Inmates cannot be permitted to decide which or-ders they will obey, and when they will obey them." *Soto,* 744 F.2d at 1267. Although Thomas argues that he was not told explicitly that his refusal to comply with direct orders would result in the use of a chemical agent, the test here is whether the conduct of the officers was reasonable under the circumstances. "The ... use of ... tear gas ... in small amounts may be a necessary prison technique if a prisoner refuses after adequate warning to move from a cell or upon other provocation presenting a reasonable possibility that slight force will be required." *Id.* at 1270. The refusal by Thomas to comply with several direct orders undoubtedly was such a provocation. In this connection it is pertinent that Thomas is an inmate in segregation at a maximum security prison and that he has an extensive disciplinary record, including numerous assaults on correctional personnel. *See* Thomas Depo at 3–7. Also pertinent is the fact that Thomas required no medical treatment in connection with the incident of which he complains. *See Lunsford,* 17 F.3d at 1582 (citing *Hudson,* 503 U.S. at 6–10, 112 S.Ct. 995) (the degree of injury is relevant to determining whether excessive force was used). "Although prison officials are not free under any circumstances to use physical force indiscriminately or physical force that is wholly lacking in legitimate penological justification, we must remember that prisons are not country clubs, nor, for that matter, democracies and prison officials' actions in using chemical agents in a humane manner to control recalcitrant inmates who pose threats to institutional security will rarely be a proper basis for judicial oversight." *Colon v. Schneider,* 899 F.2d 660, 669 (7th Cir.1990). The Court concludes that no reasonable jury could find that Thomas was a victim of excessive force, and therefore summary judgment will be granted in favor of Russell, Sawyer, Schram, and Waller.

## 2. Deliberate Indifference to Serious Medical Needs (Count 3 and Count 5)

■■ As discussed, both Count 3 and Count 5 of Thomas's complaint allege improper denials of medical care by Tamms personnel, in violation of Thomas's Eighth Amendment rights. Count 3 of Thomas's complaint alleges that Riley and Wagoner denied Thomas proper medical care after Thomas attempted to commit suicide on November 21, 2000. Specifically, Thomas charges that after the suicide attempt Wagoner returned Thomas to his cell on Riley's orders, without attempting to furnish Thomas with appropriate psychiatric care. However, the record shows that, after Thomas was returned to his cell, he was monitored by correctional personnel and a registered nurse, and that Thomas was able to see a mental health professional the next day. *See* Doc. 38 ¶ 20, ¶ 73; Thomas Depo at 55, 28. Count 5 of the complaint alleges that after Thomas allegedly was assaulted by correctional staff on December 31, 2000, Caliper denied Thomas medical care until January 10, 2001.

■■ In *Estelle v. Gamble*, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976), the Court recognized that "deliberate indifference to serious medical needs of prisoners" may constitute cruel and unusual punishment under the Eighth Amendment. *Id.* at 104, 97 S.Ct. 285. *See also Farmer v. Brennan*, 511 U.S. 825, 828–29, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). Under *Estelle*, only deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment. *See* 429 U.S. at 104, 97 S.Ct. 285. In this Circuit, deliberate indifference "is merely a synonym for intentional or criminally reckless conduct." *Salazar v. City of Chicago*, 940 F.2d 233, 238 (7th Cir.1991). Deliberate indifference does not encompass negligence, or even gross negligence, as those terms are used in the context of tort cases. *See Shockley v. Jones*, 823 F.2d 1068, 1072 (7th Cir.1987). Thus, an inadvertent failure to provide adequate medical care does not amount to deliberate indifference or punishment within the meaning of the Eighth Amendment. *See Estelle*, 429 U.S. at 105–06, 97 S.Ct. 285; *Holmes v. Sheahan*, 930 F.2d 1196, 1200 (7th Cir.1991). Deliberate indifference "implies at a minimum actual knowledge of impending harm easily preventable, so that a conscious, culpable refusal to prevent harm can be inferred from the defendant's failure to prevent it." *Duckworth v. Franzen*, 780 F.2d 645, 653 (7th Cir.1985). In determining whether a deprivation of medical care amounts to deliberate indifference, a court should consider such factors as "the severity of the medical problem, the potential for harm if medical care is denied or delayed and whether any such harm actually resulted from the lack of medical attention." *Burns v. Head Jailor of LaSalle County Jail*, 576 F.Supp. 618, 620 (N.D.Ill.1984).

■■ As discussed, for an Eighth Amendment claim to arise, an inmate must be suffering from a serious medical need to which prison officials are deliberately indifferent. "A medical need is 'serious' if it is one that a physician has diagnosed as mandating treatment, or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention, and if untreated could result in further significant injury or unnecessary pain, and that significantly affects the person's daily activities or features chronic and substantial pain." *Wilson v. Vannatta*, 291 F.Supp.2d 811, 816 (N.D.Ind.2003) (citing *Gutierrez v. Peters*, 111 F.3d 1364, 1373 (7th Cir.1997)). *See also Heinrich v. Prange*, Civil No. 05–851–JPG, 2006 WL 2078202, at *3 (S.D.Ill. July 24, 2006) (an

inmate's allegation of a "red and bruised" arm was not a serious medical need); *Lee v. Brewer*, No. 91 C 7819, 1994 WL 46683, at *4–5 (N.D.Ill. Feb.14, 1994) (evidence that excessive buildup of wax in an inmate's ear caused "discomfort and some temporary hearing loss" did not show a serious medical need). The record discloses little evidence that Thomas was suffering from a serious medical need when the complained-of conduct occurred. *See* Thomas Depo at 27–28, 59–62.

However, assuming for the sake of argument that Thomas was indeed suffering from a serious medical need, the record as to both Count 3 and Count 5 discloses at most a minor delay in furnishing medical care that may or may not have been negligent. Under settled law in this Circuit, this is not sufficient to establish an Eighth Amendment claim. *See Gutierrez*, 111 F.3d at 1366, 1373–75 (finding that delays in receiving treatment for an inmate's infected cyst did not amount to deliberate indifference despite the fact that the cyst burst and the inmate suffered considerable pain); *Martin v. Tyson*, 845 F.2d 1451, 1457–58 (7th Cir.1988) (a delay of several months in treating an inmate's broken tooth did not amount to deliberate indifference); *Murphy v. Lane*, 833 F.2d 106, 107–08 (7th Cir.1987) (an inmate did not state a claim for deliberate indifference to his medical needs by alleging that he had been transferred to a facility which was not equipped to deal with his severe psychological problems, that officials knew of his homicidal tendencies, that he was ordered released from a hospital and transferred some six and one-half hours after entering the hospital following a suicidal attempt, and that he was not retransferred to a facility with an adequate psychiatric staff for one week); *Shockley*, 823 F.2d at 1069, 1072 (finding that a delay of several months in providing a paraplegic inmate with medical supplies did not amount to

deliberate indifference despite the fact that the inmate lost substantial amounts of bone from his buttock); *Benson v. Cady*, 761 F.2d 335, 341 (7th Cir.1985) (a two-day wait to see a doctor for a neck injury was not deliberate indifference); *Grant v. Hare*, No. 91 C 2476, 1992 WL 249602, at *3 (N.D.Ill. Sept.25, 1992) ("Although Dr. Hare may have caused Grant to wait four days before receiving needed x-rays of his ankle, such a delay does not amount to deliberate indifference.").

■■■■ A mere "'refusal' to provide medical care, without more, will not establish deliberate indifference, nor will delay, even if serious injury results." *Price v. Scruggs*, Civil No. 05–653–DRH, 2006 WL 1980175, at *1 (S.D.Ill. July 12, 2006). *See also Company v. Justus*, Civil No. 05–743–GPM, 2006 WL 2325021, at *3 (S.D.Ill. Aug.9, 2006) ("[M]ere delay in providing treatment, without more, will not state a claim for deliberate indifference."). This principle brings the Court to a further defect in Thomas's deliberate indifference claims warranting summary judgment. Just as there is no evidence of a serious medical need to which prison officials were deliberately indifferent, so Thomas has failed to present any evidence that he suffered serious injury, or indeed any injury, as a result of the alleged delay in furnishing medical care. To establish an Eighth Amendment violation, a plaintiff must show "substantial harm" as a result of a delay in receiving medical care. *de La Paz v. Danzl*, 646 F.Supp. 914, 922 (N.D.Ill. 1986) (quoting *Thomas v. Pate*, 493 F.2d 151, 159 (7th Cir.1974)). *See also Gibson v. McEvers*, 631 F.2d 95, 98 (7th Cir.1980); *Burns*, 576 F.Supp. at 620. Correspondingly, "[a]n inmate who complains that delay in medical treatment rose to a constitutional violation must place *verifying medical evidence* in the record to establish the detrimental effect of delay in medical

treatment to succeed." *Langston v. Peters*, 100 F.3d 1235, 1240 (7th Cir.1996) (quoting *Beyerbach v. Sears*, 49 F.3d 1324, 1326 (8th Cir.1995)) (emphasis in original). *Cf. Hill v. Dekalb Reg'l Youth Det. Ctr.*, 40 F.3d 1176, 1188 (11th Cir.1994). In this case the record is devoid of any evidence concerning harm Thomas suffered as a result of delays in receiving medical treatment. In fact, Thomas specifically testified that no such harm occurred as a result of Caliper's alleged refusal to provide medical care to him. *See* Thomas Depo at 54. No reasonable jury could find for Thomas on his deliberate indifference claims. Therefore, summary judgment will be granted in favor of Riley and Wagoner as to Count 3 of Thomas's complaint and in favor of Caliper as to Count 5 of the complaint.

### 3. Retaliation (Count 7)

As discussed, Count 7 of Thomas's complaint alleges that Hilliard violated Thomas's First Amendment rights. Specifically, Thomas charges that on January 3, 2001, Hilliard refused to serve Thomas his lunch meal tray, allegedly in retaliation for Thomas's conduct in requesting an investigation of the incident on December 31, 2000, in which Thomas allegedly was beaten by Tamms correctional officers. Thomas contends also that Hilliard subsequently filed a false report stating that Thomas refused his lunch meal tray. The Court concludes that Hilliard's request for summary judgment on this claim is well taken.

In general a prison inmate has a right under the First Amendment to file grievances and lawsuits complaining about the conditions of his or her confinement. *See Walker v. Thompson*, 288 F.3d 1005, 1009 (7th Cir.2002); *DeWalt*, 224 F.3d at 618; *Babcock v. White*, 102 F.3d 267, 275 (7th Cir.1996); *Cain v. Lane*, 857 F.2d 1139, 1143 (7th Cir.1988). To prove that prison officials retaliated against an inmate for filing grievances and lawsuits in violation of 42 U.S.C. § 1983, the inmate must demonstrate that (1) he or she engaged in constitutionally-protected conduct and (2) such conduct was a substantial or motivating factor behind the allegedly retaliatory acts. *See Moore v. Sarrazin*, No. 95 C 5185, 1997 WL 610307, at *4 (N.D.Ill. Sept.29, 1997) (citing *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287, 97 S.Ct. 568, 50 L.Ed.2d 471 (1976)). "Although it is easy to state a retaliation claim, ... the burden of proving the claim is heavy." *Cole v. Litscher*, No. 04–C–116–C, 2005 WL 627791, at *6 (W.D.Wis. Mar.15, 2005). The retaliation inquiry should be undertaken "in light of the 'general tenor' of *Sandin* [*v. Conner*, 515 U.S. 472, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995)], which 'specifically expressed its disapproval of excessive judicial involvement in day-to-day prison management.'" *Babcock*, 102 F.3d at 275 (quoting *Pratt v. Rowland*, 65 F.3d 802, 807 (9th Cir.1995)). *See also Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir.1995) (noting that "given the ease with which a retaliation claim may be fabricated, summary judgment may be granted if, at [the] summary judgment stage, the claim appears insubstantial.").

The Court finds several defects in Thomas's retaliation claim. For one, although the right of an inmate to be free of retaliation for filing grievances and lawsuits is well established, it is not at all clear that the speech for which Thomas contends he was punished, that is, requesting an inquiry into his alleged beating by correctional staff, constitutes protected speech for First Amendment purposes. *See Lindell v. O'Donnell*, No. 05–C–04–C, 2005 WL 2740999, at *27 (W.D.Wis. Oct.21, 2005) (noting that a prison inmate's speech

is not protected by the First Amendment unless it relates to a matter of public concern, as opposed to a matter of private concern to the inmate). If the Court were to conclude that the speech at issue constitutes protected speech such as to give rise to a retaliation claim in this case, in all likelihood the Court would be required to find that Thomas's retaliation claim is barred by the doctrine of qualified immunity. *See id.* at *31 (granting summary judgment on grounds of qualified immunity as to a claim by a prison inmate that prison officials retaliated against him for threatening to file a lawsuit, as opposed to actually filing a lawsuit, because the former is a matter as to which there is no clearly established constitutional right in this Circuit).

However, the Court need not decide these interesting questions because summary judgment is proper as to Thomas's retaliation claim on simpler grounds, namely, that Thomas has failed to produce any evidence that his alleged protected speech was a substantial, motivating factor for the alleged retaliation. "As easy as it is to state a viable claim [for retaliation] at the outset of litigation, an inmate cannot rest on his original allegations as the lawsuit progresses .... [T]o establish retaliation, the inmate must show that he has evidence from which a reasonable jury could find that the defendants' knowledge of his protected activity was a *substantial* or *motivating* factor in their decision to take an adverse action against him." *Johnson v. Kingston,* 292 F.Supp.2d 1146, 1152–53 (W.D.Wis.2003) (emphasis in original). In this case, Thomas has produced no evidence that a substantial motivating factor in Hilliard's alleged refusal to serve Thomas his meal tray was retaliation. In essence, Thomas relies upon mere chronology of events to establish retaliation. However, at the summary judgment stage, this is not enough to show a genuine issue

for trial. "It is well established that a plaintiff cannot establish retaliation simply by showing that the protected activity happened before the defendants took their action. An adverse act following hard on the heels of the exercise of a protected right might be suspicious but it would not be enough by itself to allow a reasonable jury to find that it was a reason for the defendants' decision to take an adverse action against the plaintiff." *Johnson,* 292 F.Supp.2d at 1154 (citations omitted). In other words, "[t]he plaintiff must be able to point to other reasons that suggest a relationship between the two events." *Id. See also Cole,* 2005 WL 627791, at *7 (granting summary judgment as to an inmate's retaliation claim where the sole evidence of retaliation was the chronology of events). Thomas has failed to produce evidence of a retaliatory motive, and therefore his retaliation claim against Hilliard must be dismissed.

■ As a final matter the Court notes that, even if the record disclosed any evidence of retaliation, and it does not, in all likelihood the alleged retaliation simply does not rise to the level of a constitutional violation. "[A] court may deny an inmate leave to proceed if the allegedly retaliatory act is not one that could be said to have had the effect of deterring an inmate 'of ordinary firmness' from engaging in similar activity." *Johnson,* 292 F.Supp.2d at 1152 (quoting *Pieczynski v. Duffy,* 875 F.2d 1331, 1333 (7th Cir.1989)). In *Bart v. Telford,* 677 F.2d 622 (7th Cir.1982), the court cautioned federal courts against entertaining retaliation claims over which "a certain air of the ridiculous hangs," and said, "It would trivialize the First Amendment to hold that harassment for exercising the right of free speech was always actionable no matter how unlikely to deter a person of ordinary firmness from that exercise." *Id.* at 625. A number of sister

circuits have adopted a similar "de minimis" standard in evaluating retaliation claims in the prison setting. *See Morris v. Powell,* 449 F.3d 682, 683–87 (5th Cir.2006) (holding that prison officials' alleged actions in moving a prison inmate to a less desirable job within the prison did not rise to the level of actionable retaliation); *Rauser v. Horn,* 241 F.3d 330, 333 (3d Cir. 2001) (to be cognizable as retaliation, an adverse action by prison officials must be "sufficient to deter a person of ordinary firmness from exercising his [constitutional] rights"); *Davidson v. Chestnut,* 193 F.3d 144, 150 (2d Cir.1999) (stating that, to be actionable, retaliation against a prisoner must be likely to "chill a person of ordinary firmness from continuing to engage" in activity protected by the First Amendment and that a showing of an injury that is "more than *de minimis* " is necessary); *Thaddeus–X v. Blatter,* 175 F.3d 378, 396 (6th Cir.1999) (for purposes of a retaliation claim, the requisite "adverse action" by prison officials is one that would deter a person of ordinary firmness from the exercise of the constitutional right at stake); *ACLU of Maryland, Inc. v. Wicomico County, Md.,* 999 F.2d 780, 785–86 (4th Cir.1993) (holding that a decision by prison officials to discontinue contact visits with inmates by an ACLU paralegal was not cognizable as retaliation, "whether or not it was done in response to filing of a lawsuit" and even though it imposed "inconvenience[ ]" on the paralegal and inmates). In this case, the Court is inclined to conclude that the retaliation alleged in Count 7 is subject to dismissal under the de minimis standard, given the trivial nature of the alleged constitutional deprivation which obviously has not deterred Thomas from bringing this suit, together with the fact that allowing such claims to proceed in federal court risks virtually endless federal judicial interference in the operation of prisons. *See Babcock,* 102

F.3d at 275. However, the Court is not required to decide the question. Assuming for the sake of argument that the alleged retaliation amounts to a cognizable violation of Thomas's constitutional rights under 42 U.S.C. § 1983, Thomas has failed to produce evidence of retaliatory intent sufficient to withstand summary judgment.

### 4. Qualified Immunity (Count 2, Count 5, Count 8, Count 14)

■ The Court already has concluded that the claims for excessive force asserted against Russell, Sawyer, Schram, and Waller in Count 1 of Thomas's complaint, the claim of deliberate indifference asserted against Riley and Wagoner in Count 3, the deliberate indifference claim asserted against Caliper in Count 5, and the retaliation claim asserted against Hilliard in Count 7 are due to be dismissed, resulting in the dismissal of Count 1, Count 3, and Count 7 in their entirety. Thus, the Court turns to the question of whether summary judgment on the grounds of qualified immunity is proper as to Count 2, the remaining portion of Count 5, Count 8, and Count 14. In general, of course, a government officer is entitled to qualified immunity if a reasonable officer could have believed that his or her conduct was constitutional in light of the clearly established law and the information the officer possessed at the time an alleged deprivation of constitutional rights occurred. *See Saucier v. Katz,* 533 U.S. 194, 200–02, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001); *Anderson v. Creighton,* 483 U.S. 635, 638–39, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987); *Leaf v. Shelnutt,* 400 F.3d 1070, 1079–80 (7th Cir.2005). All of the constitutional violations alleged by Thomas implicate clearly established constitutional rights, making summary judgment on the basis of qualified immunity improper.

798

As discussed, Count 2, the remaining portion of Count 5, and Count 14 of Thomas's complaint allege that Thomas was subjected to cruel and unusual punishment, including excessive force, in violation of the Eighth Amendment. Thomas's right to be free of excessive force and other cruel and unusual punishment was clearly established when all of the alleged constitutional violations occurred. *See Whitley*, 475 U.S. at 318–21, 106 S.Ct. 1078; *Rhodes v. Chapman*, 452 U.S. 337, 345–46, 101 S.Ct. 2392, 69 L.Ed.2d 59 (1981); *Ingraham v. Wright*, 430 U.S. 651, 664, 97 S.Ct. 1401, 51 L.Ed.2d 711 (1977); *Davis v. Lane*, 814 F.2d 397, 400 (7th Cir.1987); *Soto*, 744 F.2d at 1268.[2] Likewise, at all relevant times Thomas had a clearly established right to be free from retaliation for exercising his First Amendment right to file grievances and lawsuits regarding his conditions of confinement, such as is alleged in Count 8 of Thomas's complaint. *See Connick v. Myers*, 461 U.S. 138, 147, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983); *Mt. Healthy*, 429 U.S. at 283–87, 97 S.Ct. 568; *DeWalt*, 224 F.3d at 618; *Babcock*, 102 F.3d at 275–76; *Zorzi v. County of Putnam*, 30 F.3d 885, 896 (7th Cir.1994); *Yat-*

*vin v. Madison Metro. Sch. Dist.*, 840 F.2d 412, 418–19 (7th Cir.1988). *See also Carr v. Whittenburg*, No. 3:01–cv–625–DGW, 2006 WL 1207286, at *5 (S.D.Ill. Apr.28, 2006) ("[I]t is clearly established beyond peradventure that prison officials may not retaliate against prisoners for exercising their First Amendment right to file grievances or otherwise complain about their conditions of confinement.").[3] The Court concludes that summary judgment on the grounds of qualified immunity must be denied.

**5. Official Capacity Claims (Count 2, Count 5, Count 8, Count 14)**

The Court concludes that the claims asserted against Bartley and Wright in their official capacities in Count 2 of Thomas's complaint, the claims asserted against Bundren, Cook, Hilliard, Neighbors, and Studer in their official capacities in Count 5, the claim asserted against McClelland in his official capacity in Count 8, and the claims asserted against Folsom, Neighbors, Plott, Rice, Sawyer, and Studer in their official capacities in Count 14 are all due to be dismissed.[4] An action

2. Although the Court already has concluded that Thomas's Eighth Amendment claims against Riley and Wagoner in Count 3 of Thomas's complaint and against Caliper in Count 5 of the complaint present no genuine issue for trial, it perhaps should be pointed out that Thomas's right to be free from deliberate indifference to his serious medical needs likewise was clearly established when the conduct Thomas complains of occurred. *See Farmer*, 511 U.S. at 843–44, 114 S.Ct. 1970; *Helling v. McKinney*, 509 U.S. 25, 35–36, 113 S.Ct. 2475, 125 L.Ed.2d 22 (1993); *Estelle*, 429 U.S. at 104–05, 97 S.Ct. 285; *Murphy*, 51 F.3d at 717; *Brownell v. Figel*, 950 F.2d 1285, 1289–90 (7th Cir.1991); *Salazar*, 940 F.2d at 239. Thus, summary judgment on the grounds of qualified immunity would be inappropriate as to Thomas's deliberate indifference claims as well.

3. As has been discussed, were it the case that the retaliation claim asserted in Count 7 of Thomas's complaint presented a genuine issue for trial, and the Court already has concluded that it does not, the Court likely would dismiss that claim on the grounds of qualified immunity, as a prison inmate has no clearly established constitutional right in this Circuit to be free from retaliation for speech regarding conditions of confinement apart from grievances and lawsuits. The same rationale would not permit dismissal of Count 8 of the complaint on the grounds of qualified immunity, although it might be the case that Count 8 is subject to dismissal as not rising to the level of actionable retaliation, an issue the Court is not required to decide at this time.

4. Because the Court already has concluded that Count 1, Count 3, the deliberate indifference claim asserted in Count 5, and Count 7 present no genuine issue for trial, the Court

against governmental officers in their official capacity is actually a suit against the governmental entity for which they work. "Personal-capacity suits seek to impose personal liability upon a government official for actions he takes under color of state law .... Official-capacity suits, in contrast, 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'" *Kentucky v. Graham*, 473 U.S. 159, 165–66, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985) (quoting *Monell v. Department of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 690 n. 55, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978)). "As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Id.* at 166, 105 S.Ct. 3099. Therefore, Thomas's official capacity claims in this case must be deemed to be claims against the Illinois Department of Corrections ("IDOC"). *See Brunken v. Lance*, 807 F.2d 1325, 1329 (7th Cir.1986) ("[A]n official-capacity suit against a state official for actions taken under the color of state law ... is, in all respects other than name, to be treated as a suit against the [government] entity.").

The Eleventh Amendment, however, bars suits for damages against state officials in their official capacities. *See Graham*, 473 U.S. at 166–67, 105 S.Ct. 3099; *Moore v. Indiana*, 999 F.2d 1125, 1128–29 (7th Cir.1993); *Garrett v. Illinois*, 612 F.2d 1038, 1040 (7th Cir.1980); *Ridlen v. Four County Counseling Ctr.*, 809 F.Supp. 1343, 1358 (N.D.Ind.1992). Illinois has not waived its Eleventh Amendment immunity, *see Harris v. Sheahan*, No. 98 C 1271, 2000 WL 51800, at **3–4 (N.D.Ill. Jan.13, 2000); *Seidel v. Greenwalt*, No. 93 C 20132, 1993 WL 393069, at

**2–3 (N.D.Ill. Sept. 27, 1993), and Congress has not abrogated the states' immunity in actions under 42 U.S.C. § 1983. *See Quern v. Jordan*, 440 U.S. 332, 341, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979); *Hutto v. Finney*, 437 U.S. 678, 700, 98 S.Ct. 2565, 57 L.Ed.2d 522 (1978); *Baxter v. Vigo County Sch. Corp.*, 26 F.3d 728, 731–32 (7th Cir.1994); *Thomas v. Brown*, 824 F.Supp. 160, 162–63 (N.D.Ind.1993). Furthermore, neither states nor state officials in their official capacities are "persons" within the meaning of section 1983. *See Hafer v. Melo*, 502 U.S. 21, 26–27, 112 S.Ct. 358, 116 L.Ed.2d 301 (1991); *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989). Therefore, all claims for damages asserted by Thomas against IDOC officers in their official capacities must be dismissed.

The Eleventh Amendment does not preclude an official capacity suit seeking injunctive relief against a state official, provided the relief sought is prospective and is based on the unconstitutionality of the official's actions. *See Graham*, 473 U.S. at 169 n. 18, 105 S.Ct. 3099; *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 102, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984); *Ex parte Young*, 209 U.S. 123, 159–60, 28 S.Ct. 441, 52 L.Ed. 714 (1908). *Cf. Edelman v. Jordan*, 415 U.S. 651, 666–67, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974) (the principle that, under the Eleventh Amendment, a state may not be held liable for damages in federal court cannot be evaded merely by characterizing a request for monetary relief against state officials as "equitable" restitution). In this case, however, the Court discerns no basis for a grant of injunctive relief. It is apparent that the gist of Thomas's claims is that in

need not determine whether the official capacity claims asserted therein should be dismissed, although, for the reasons discussed infra it is clear that they should be.

the past he has been subjected to deprivations of his constitutional rights. "Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief, however, if unaccompanied by any continuing, present adverse effects." *O'Shea v. Littleton,* 414 U.S. 488, 495–96, 94 S.Ct. 669, 38 L.Ed.2d 674 (1974). *See also City of Los Angeles v. Lyons,* 461 U.S. 95, 105–06, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983) (that the plaintiff might have been illegally choked by city police, although this presumably afforded him standing to claim damages against individual officers and perhaps against the city, did not establish a real and immediate threat of future injury, notwithstanding the plaintiff's allegation that city police routinely applied chokeholds in situations where they were not threatened by use of deadly force, given a lack of evidence that it was the invariable practice of the police to choke all arrestees); *Palmer v. City of Chicago,* 755 F.2d 560, 571 (7th Cir.1985) ("[A] plaintiff's standing must be premised upon more than hypothetical speculation and conjecture that harm will occur in the future."); *Magnuson v. City of Hickory Hills,* 730 F.Supp. 1439, 1442 (N.D.Ill. 1990) (a plaintiff may seek injunctive relief only if he or she can demonstrate the threat of a future injury, and to seek injunctive relief for a past injury, that injury must be accompanied by continuing adverse effects); *Alvarez v. City of Chicago,* 649 F.Supp. 43, 44 (N.D.Ill.1986) ("A plaintiff may seek injunctive relief only if he can demonstrate future injury. Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . . A past injury must be accompanied with continuing adverse effects.").

To procure injunctive relief in federal court, "the plaintiff must show that he 'has sustained or is immediately in danger of sustaining some direct injury.' . . . The injury or threat of injury must be both 'real and immediate', not merely 'conjectural' or 'hypothetical.'" *Chavez v. Illinois State Police,* No. 94CV5307, 1996 WL 66136, at *5 (N.D.Ill. Feb.13, 1996) (quoting *Lyons,* 461 U.S. at 102, 103 S.Ct. 1660). "Past 'exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects.' . . . Just because a party anticipates a future violation does not mean that the threat is 'sufficiently real and immediate.' . . . In other words, past wrongs do not always add up to the 'real and immediate threat of injury' necessary to satisfy the case or controversy requirement of Article III." *Id.* (quoting *Lyons,* 461 U.S. at 102, 103, 103 S.Ct. 1660). In this case Thomas has produced no credible evidence of a threat of future injury or of continuing adverse effects of any past injury he allegedly has suffered. The Court concludes that Thomas's official capacity claims as to Count 2 of his complaint, Count 8, Count 14, and the claims in Count 5 of excessive force and cruel and unusual punishment must be dismissed.

### CONCLUSION

The motion for partial summary judgment (Doc. 57) brought by Defendants Kenneth Bartley, Jeff Bundren, Terry Caliper, Tim Cook, David Folsom, Paul Hilliard, Mike McClelland, Bret Neighbors, Eric Plott, Frank Rice, Sam Riley, James Russell, Curt Sawyer, Jon Schram, James Studer, Edward Wagoner, Henry Waller, and Derk Wright is **GRANTED in part** and **DENIED in part**. Summary judgment is **GRANTED** as to: the allegations of excessive force asserted against Russell, Sawyer, Schram, and Waller in Count 1 of Plaintiff Wade Thomas's operative complaint (Doc. 38); the allegations of deliberate indifference to a serious medical need

asserted against Riley and Wagoner in Count 3; the allegations of deliberate indifference to a serious medical need asserted against Caliper in Count 5; and the allegations of retaliation asserted against Hilliard in Count 7. Count 1, Count 3, and Count 7 are **DISMISSED with prejudice.** Defendants' request for summary judgment on the grounds of qualified immunity as to Count 2, Count 8, Count 14, and the excessive force and cruel and unusual punishment claims asserted in Count 5 is **DENIED.** Defendants' request for summary judgment as to the official capacity claims asserted in Count 2, Count 8, Count 14, and the portion of Count 5 alleging excessive force and cruel and unusual punishment is **GRANTED.**[5]

**IT IS SO ORDERED.**

---

**5.** The Court summarizes briefly the procedural posture of this case in light of this Order: Count 2 of Thomas's complaint remains as to Bartley and Wright in their individual capacities only; Count 5 remains as to Thomas's allegations of excessive force against Bundren, Cook, Hilliard, Neighbors, and Studer in their individual capacities only, and as to Thomas's allegations of cruel and unusual punishment against Bundren, Cook, Hilliard, Neighbors, and Studer in their individual capacities only; Count 8, alleging retaliation, remains as to McClelland in his individual capacity only; and Count 14, alleging excessive force, remains as to Folsom, Neighbors, Plott, Rice, Sawyer, and Studer in their individual capacities only.